UNITED STATES of America, Plaintiff-Appellee,

v.

Leonard M. BERNES, Defendant-Appellant.

No. 79–5018.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1979.

Rehearing and Rehearing En Banc Denied Oct. 10, 1979.

Edward T. M. Garland, John R. Martin, Atlanta, Ga., for defendant-appellant.

Gilbert E. Andrews, Chief, Appellate Section, M. Carr Ferguson, Asst. Atty. Gen., Charles E. Brookhart, George L. Hastings, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, AINSWORTH and RO-NEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Leonard M. Bernes was convicted by a jury on five counts of willfully aiding and assisting in the preparation of false and fraudulent income tax returns in violation of 26 U.S.C. § 7206(2). He was sentenced to serve concurrent terms of two years on each count upon which he was convicted. Appellant appeals and assigns several points of error in the trial of the case in the district court. We conclude that appellant's assignments are without merit, and affirm the conviction.

The facts relevant to the issues raised on appeal are relatively uncomplicated. Appellant Bernes is a certified public accountant practicing in Atlanta, Georgia. He pre-

pares both personal and corporate income tax returns. Bernes was initially charged with sixteen different counts of violating § 7206(2). After a lengthy trial, the jury convicted him on five counts.[1] Three aspects of the trial are alleged to have resulted in reversible error.

The government's evidence necessarily varied from count to count, but there were certain general patterns. One practice employed by the prosecutor was to introduce the IRS agent who audited the particular return involved in each count. The agent testified as to various aspects of the investigation, and in certain instances stated the names of those individuals interviewed during the course of the audit. However, in no instance did the agent quote any statement made to him during the course of his investigation. Defendant objected to this testimony, arguing that by merely naming the persons interviewed the agent was suggesting that those interviewed had made statements to the agent indicating defendant's guilt. Defendant characterized this type of testimony as hearsay evidence in that it necessarily involved statements of parties other than the agents themselves. Defendant's objections to the testimony were overruled by the district judge.

IRS Special Agent Stephen Sachs was called to testify as to one of the counts of the indictment. After revealing, pursuant to the prosecutor's questioning, the names of those persons who he had talked to during the course of his investigation of the defendant, the Special Agent was asked,

"Based on your investigation, Mr. Sachs, did you recommend prosecution on this . . ?" Sachs did not answer because defense counsel interrupted with an objection to the question. Defendant's subsequent motion for a mistrial on account of the allegedly prejudicial nature of the question was denied. The district judge then read a lengthy instruction to the jury advising them to ignore the question.

After this incident, the trial proceeded without further interruption until the final arguments of counsel. The district judge allocated forty-five minutes per side for summation. During their summation, however, the defense attorneys found themselves short of time. The district judge granted their requests for several additional minutes, and the combined defense summation totalled fifty-two minutes. No objection as to the time allowed was made at the close of the arguments, and the district judge subsequently charged the jury. The purported inadequacy of time for argument was first brought to the attention of the court during objections by the defense counsel to various parts of the court's jury charge, but even then no formal request for additional time was made. On the next day, after the jury had begun its deliberations, defense counsel formally moved for a mistrial based upon the contention that inadequate time had been allowed for their closing argument. The motion was denied, and the jury's verdict followed.

1. Appellant was originally charged with sixteen counts of willfully aiding and assisting in the preparation of false and fraudulent tax returns. The government dismissed five counts and the district judge granted defendant's motion for judgment of acquittal as to two other counts. The jury returned a verdict of not guilty on four of the remaining nine counts.

Appellant was convicted on five remaining counts which are described below.

Count 3 charged that appellant improperly prepared the 1972 personal tax return of Dr. Antonio Perez by understating gross receipts by $10,000 and listing various deductions in excess of what Dr. Perez' records justified.

Count 4 alleged that the appellant incorrectly prepared the corporate tax return of Leiber Foods, Inc., for the taxable year ending Novem-

ber 30, 1974, by including a deduction of $317,-000 for accrued purchases that was not justified by the corporation's records.

Count 6 concerned the corporate tax return for Decatur Glass & Mirror Company, Inc., for the taxable year ending March 31, 1974, and charged that appellant caused an overstatement of $15,000 in purchases without basis in the records.

Count 7 involved the corporate tax return of Clarke Glass & Mirror Company, Inc., for the taxable year ending November 30, 1973, and alleged that appellant's actions resulted in a $42,000 overstatement of purchases.

Count 15 charged appellant with improperly deducting a number of items from the 1974 personal tax return of Dr. Alfonso Marmolejo without basis in the Doctor's records.

1

Appellant argues that the testimony of the agents concerning the individuals who were interviewed by them should have been excluded as hearsay. We disagree. Acceptance of appellant's contention would work a radical and dangerous expansion of the hearsay doctrine. The notion of hearsay is a well-defined concept and testimony should not be excluded under that rubric unless it falls within the definition contained in Fed.R.Evid. 801.[2] Testimony is considered hearsay only if the witness is testifying to a statement made by another party in order to prove or demonstrate the truth of that statement. Fed.R.Evid. 801(c) See *United States v. Williamson*, 5 Cir., 1971, 450 F.2d 585, 589, cert. denied, 405 U.S. 1026, 92 S.Ct. 1297, 31 L.Ed.2d 486 (1972).

Appellant relies on *United States v. Brown*, 5 Cir., 1977, 548 F.2d 1194, in support of his claim that the testimony was implied hearsay. In *Brown*, the defendant had also been convicted for willfully aiding and assisting in the preparation of false tax returns. The testimony most damaging to the defendant was given by an IRS agent who testified that of 160 returns prepared by Brown, between 90% and 95% contained improper deductions. The agent's testimony was not otherwise supported by any documentary evidence in the record. Moreover, it was clear from the record that the primary source of the agent's conclusion was conversations with the individual taxpayers that the defendant had assisted. *Brown, supra*, 548 F.2d at 1204–05.

In the present action, the implication of an inculpatory statement from those interviewed by the IRS agents is totally conjectural. Appellant argues that Count 4, in-

volving the corporate tax return of Leiber Foods, Inc., provides an appropriate example of the alleged implied hearsay. The charge against the appellant was that he fabricated a deduction for accrued payables of approximately $300,000 in excess of the proper amount. Appellant's defense to this count was that the president of Leiber Foods, Joseph Leiber, discussed the deduction with appellant without mentioning the existence of the relevant accounting journals, and told appellant that the proposed figure for the deduction was too low. In reliance upon Leiber's statements, appellant allegedly revised the figure upward. Leiber had died prior to trial and was thus unable to testify.

One issue at trial was whether appellant knew about the existence of an accrued accounts payable journal kept by the corporation. The journal itself had been introduced into evidence by the government. Special Agent Sachs[3] was called to testify as to his investigation about the journal. Sachs stated that he asked appellant about the journal, but that appellant remarked that he knew nothing about it. Sachs then testified that subsequent to his conversation with appellant, he interviewed four persons about the journal. Sachs named each of the four, one of whom was Joseph Leiber. From this testimony, appellant argues that the jury could clearly imply that Joseph Leiber had made certain statements to Sachs which refuted appellant's proffered defense. Specifically, appellant contends that Sachs' testimony implied that Leiber denied ever having talked with appellant about the deduction or at least that Leiber did not mention the alleged discussion to Sachs. As a result of this implied state-

---

**2.** In relevant part, Rule 801 states:

801(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

. . . . . .

801(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

**3.** Sachs was not the IRS agent who performed the initial tax audit. Rather, Sachs was a special agent called to investigate after the initial audit disclosed possible improprieties. The revenue agent who performed the original audit testified before Sachs. That agent did not mention any conversations with other parties. His testimony and conclusions were based totally upon the relevant documentary evidence introduced by the government at trial.

ment, the appellant claims that the prosecution effectively transmitted the testimony of a party, namely Leiber, who was not present to be cross-examined, in violation of the rule against hearsay.

The contention is without merit. First, the accrued accounts payable journal was actually in evidence. Thus, Sachs could have concluded that the appellant had improperly increased the deduction regardless of what any of the four persons interviewed said. The journal itself could have provided sufficient reason to proceed since one might normally expect a tax preparer to be familiar with the corporation's books and accounts. Second, Leiber was only one of four persons mentioned by Sachs. There is simply no reason to imply that the conversation between Leiber and Sachs involved the alleged meeting between appellant and Leiber. Furthermore, the government did not rely on any implication from Sachs' testimony. In his closing argument, the prosecutor did not refer to Sachs' interview with Leiber, but based his argument on the journal itself and the inconsistencies in appellant's own testimony. As such, this case is distinguishable from *Brown* where the content of specific statements could be clearly implied and where those statements provided the foundation of the government's case. Here, the implication of any specific content is hopelessly speculative and the government does not rely on any such statements for the basis of its argument.

The other counts do not provide any grounds for upholding appellant's hearsay objections. Indeed, in Counts 6 and 7, the testimony of the revenue agent did not include mention of any individuals interviewed. Rather, the agent testified that his conclusions about the impropriety of certain deductions were based specifically upon his examination of the relevant accounting records. All of these records were part of the evidence before the jury. At no time did the agent mention or intimate that he had discussed the matter with any particular person. With respect to these two counts, appellant's theory borders on the frivolous.[4] The remaining two counts did involve testimony by agents stating that they spoke with certain persons during the course of their investigations. Like Count 4, however, there is nothing in the record to warrant the implication of any inculpatory statements by those interviewed. The factual basis of each agent's conclusion was clearly established in the accounting reports and records in evidence. Each tax return was introduced into evidence along with the relevant journals. Thus, the agents directly demonstrated from the journals and accounts of the individual or corporate taxpayer that the deductions at issue were not justified. No hearsay testimony was relied upon as the basis for their conclusions, and indeed, no hearsay statements were suggested by the agents' testimony.[5]

In each count, the taxpayer himself, or the chief officer of the corporation in the case of corporate returns,[6] testified and was subject to extensive cross examination. This fact is important given the principle that the prejudice from improperly admitted hearsay testimony is reduced when the out-of-court declarant is called as a witness. See *United States v. Rodriguez*, 5 Cir., 1975,

4. Since we find no basis to appellant's hearsay arguments for any of the counts, we do not reach the question whether the convictions on these two counts require affirmance of the sentence regardless of the outcome on the other three counts because of the operation of the concurrent sentence doctrine. *Cf. United States v. Nell*, 5 Cir., 1978, 570 F.2d 1251, 1257; *United States v. Bigham*, 5 Cir., 1970, 421 F.2d 1344, 1346, *cert. denied*, 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970).

5. In light of our holding that the testimony of the various agents did not constitute hearsay under Fed.R.Evid. 801, we need not reach appellee's argument that the evidence was admissible under Fed.R.Evid. 703 pertaining to the opinions of expert witnesses. *Cf. Brown, supra*, 548 F.2d at 1206 n. 22.

6. Of course, President Leiber of Leiber Foods, Inc., did not testify, *see supra*, but other officials of the corporation, including the office manager of the accounting department and the executive vice-president of the company, did testify.

509 F.2d 1342, 1348 n. 4; *United States v. Clark,* 5 Cir., 1973, 480 F.2d 1249, *cert. denied,* 414 U.S. 978, 94 S.Ct. 301, 38 L.Ed.2d 222 (1973); *United States v. Williamson, supra,* 450 F.2d at 591. Thus, even assuming the validity of appellant's hearsay theory, any prejudicial effect of the testimony is lessened by the availability of those very persons whose implied statements are the source of appellant's objections.

2

Appellant's second point of error pertains to a particular question asked by the prosecutor of Special Agent Sachs. Sachs was asked whether on the basis of his investigation if he had recommended prosecution in this case. Appellant asserts that this question necessarily invaded the jury's province of deciding the ultimate question by implying .Sachs' personal belief in appellant's guilt on the basis of evidence not before the jury.[7]

As a general rule, the trial judge is in the best position to assess the prejudicial effects of improper evidence. *Brown v. United States,* 10 Cir., 1967, 380 F.2d 477, 479, *cert. denied,* 390 U.S. 962, 88 S.Ct. 1069, 19 L.Ed.2d 1158 (1968). In this regard, a properly worded and timely instruction by the court to the jury is usually sufficient to overcome the prejudicial effects of an improper question. *Aaron v. United States,* 5 Cir., 1968, 397 F.2d 584, 586; *Beatty v. United States,* 10 Cir., 1966, 357 F.2d 19, 21.

Appellant claims that this issue should be governed by those cases where the prosecutor's statement of his personal belief in the defendant's guilt constituted reversible error. *United States v. Lamerson,* 5 Cir., 1972, 457 F.2d 371, 372 (reversing conviction where prosecutor had stated to jury that "had [defendant] not committed a crime, we would not be [prosecuting]"); *Hall v. United States,* 5 Cir., 1969, 419 F.2d 582, 587 (reversing conviction

where prosecutor had stated that "we try to prosecute only the guilty"). These cases demonstrate a legitimate concern for unwarranted comments by the government attorney. They do not support appellant's blanket contention that any statement even remotely suggestive of guilt results in reversible error. Indeed, in *United States v. Morris,* 5 Cir., 1978, 568 F.2d 396, this Court, while admonishing the prosecuting attorney for statements suggesting defendant's guilt, found that the comments did not constitute reversible error in the absence of substantial prejudice to the defendant. *Morris, supra,* 568 F.2d at 402. See *Thompson v. United States,* 5 Cir., 1959, 272 F.2d 919.

The record clearly demonstrates that the allegedly improper question did not create prejudice constituting reversible error. First, the context in which the question arose was not typical of the cases cited by appellant. Defense counsel on cross-examination had raised certain points about the thoroughness of Sachs' investigation. The prosecutor was simply demonstrating that Sachs had, in fact, made the investigation with due care. The district court accepted this explanation in finding that the question was not deliberately improper. Second, the question did not suggest Sachs' personal conclusion of appellant's guilt to the same degree as the statements in the above cases. The question technically went to Sachs' action, and not to his opinion of appellant's guilt. This point is underscored by the fact that the question did not occur during a particularly crucial part of the trial such as the closing argument. Moreover, the question was not repeated at other occasions during the trial.

Finally, and most importantly, the court did not permit the question to be answered by Sachs and immediately gave a curative instruction to the jury. Any possible prejudicial effect caused by the mere asking of

7. Appellee urges that the concurrent sentence doctrine is applicable since the alleged prejudice operates only as to one count. *Cf. United States v. Meriwether,* 5 Cir., 1973, 486 F.2d 498, 504, *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974). Given our view that the convictions on the other counts should be affirmed, we decline to address the merits of appellee's contention.

the question was cured by the prompt action of the district judge in instructing the jury to disregard the question and not to speculate on any matter related to the inquiry. The instruction itself was strongly worded and covered all the points which defense counsel themselves had suggested to the judge.[8]

■■■ Appellant's final contention is that the time allotted for final argument was so short as to constitute a deprivation of appellant's right to effective assistance of counsel. This argument too is without merit. The period of time set aside for the attorneys' closing argument is within the discretion of the district judge. *United States v. Mills*, 6 Cir., 1966, 366 F.2d 512, 515; *Butler v. United States*, 8 Cir., 1963, 317 F.2d 249, 257, cert. denied sub nom. *Benedec v. United States*, 375 U.S. 836, 84 S.Ct. 67, 11 L.Ed.2d 65 (1963). To be sure, if the argument is unreasonably curtailed, reversal may be warranted. *Butler, supra.* Here, however, the record is replete with evidence of the district judge's sensitivity to the demands of the case at trial. The judge asked both sides how much time they required for closing and listened to discussion on the point. In recognition of the complexity of the suit, the judge extended the time available for closing argument beyond the amount he normally permitted. Moreover, during the course of the argument itself, the district judge allowed defense counsel to exceed the preestablished time limit. It is also significant that appellant's attorneys did not formally request additional time at the close of their argument, but waited until after the jury had retired to raise the issue.[9]

Since each of appellant's arguments has been found to be lacking merit, we affirm the conviction.

AFFIRMED.

---

**8.** Appellant suggests that the allegedly hearsay testimony and the allegedly improper question somehow combined to create even greater prejudice. Given the close nexus between the question and the supposed hearsay, appellant argues that the inference that Leiber said something damaging about appellant became even stronger. Given our determination that the testimony was not hearsay and that the prejudicial effects, if any, of the question were cured by the cautionary instruction, we reject appellant's argument. The same uncertainties exist in implying any specific statement from Leiber on the basis of Sachs' testimony.

**9.** Moreover, appellant has not shown any actual prejudice from the court's action. The closing argument itself is not on its face incomplete or disorganized. All nine counts before the jury are covered to some degree. To be sure, certain counts are stressed over others, but the overall theme of the oral argument is consistent with the underlying theory of the defense. The argument begins with a general discussion of the requirements of criminal intent—a key issue in appellant's defense theory. After presenting these general views, particular counts are covered in great detail, leaving others to be considered more cursorily. The fact that the jury acquitted on four of nine counts refutes appellant's argument that the matter was extremely complex.