419 So.2d 436 (1982)
STATE of Louisiana
v.
Floyd WEBB.
No. 81-KA-2787.
Supreme Court of Louisiana.
September 7, 1982.
*438 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Margaret A. Coon, William R. Alford, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
S. Austin McElroy, Covington, for defendant-appellant.
MARCUS, Justice.[*]
Floyd Webb was indicted by the grand jury for the first degree murder of Randy Sebble in violation of La.R.S. 14:30.[1] After trial by jury, defendant was found guilty as charged. After a sentencing hearing before the same jury that determined the issue of guilt, the jury was unable to unanimously agree on a recommendation of a sentence of death or life imprisonment without benefit of probation, parole or suspension of sentence. Therefore, in accordance with La.Code Crim.P. art. 905.8, the trial court imposed a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. On appeal, defendant relies on seven assignments of error for reversal of his conviction and sentence.[2]

FACTS
On July 31, 1980, at about 9:00 p. m., Owen R. Meilleur, Jr., age seventeen, was approached by defendant in the parking lot of a Fat City lounge in Jefferson Parish. Defendant, who had jumped out of a car driven by Vincent Allnet (Owen's uncle), began chasing and beating Owen and forced him into the car where Vincent and Richard Allnet, Kim Kohler and Randy Sebble were already sitting. Once inside the car, Owen noticed that Randy, a sixteen-year-old boy who worked for Vincent Allnet, had been beaten. As the group drove toward Slidell, defendant and Vincent Allnet repeatedly accused Owen of having stolen their jewelry and threatened to kill him if it was not returned. After briefly stopping to buy beer, Vincent Allnet parked the car in a marshy area in St. Tammany Parish on a small shell road off the main highway. After dragging Owen from inside the car to the front of the car where Randy was already standing, defendant and Vincent Allnet beat the boys further and defendant began firing a pistol in the direction of Owen's feet. When Owen fell to the ground, he looked up to see that Vincent and Richard Allnet were both standing over him with shotguns. Moments later, Vincent shot him. As Richard ran back to the car, Owen, who was pretending to be dead, heard defendant say something about leaving no witnesses and saw him shoot Randy Sebble. Defendant and the others *439 then drove off but returned a few minutes later. One of the four men got out of the car and kicked each of the boys to be sure they were dead, then got back into the car which sped away. Owen, who was able to drag himself to the side of the main highway, was eventually aided by a passing motorist who transported him to the hospital. Randy Sebble died as a result of a single gunshot wound to the chest. On the basis of information provided by Owen, defendant, the Allnets and Kohler were arrested the next day and subsequently charged as aforesaid.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to quash the indictment. He essentially argues that the entire statutory scheme for first degree murder is unconstitutional in that it permits the state to challenge for cause jurors who are unable to impose the death penalty prior to the guilt phase of the bifurcated trial.
La.Code Crim.P. art. 905 provides that following a verdict of guilty in a capital case, a sentence of death may be imposed only after a sentencing hearing. Article 905.1 provides that the sentencing hearing shall be conducted before the same jury that determined the issue of guilt.
La.Code Crim.P. art. 798 provides in pertinent part:
It is good cause for challenge on the part of the state, but not on the part of the defendant that:
....
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; ....
Article 798 was amended to conform with the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." On the other hand, the Court found no constitutional bar to excluding jurors who stated in advance of trial that they could not even consider returning a verdict of death or that their attitude about the death penalty would prevent them from making an impartial decision as to defendant's guilt. State v. George, 371 So.2d 762 (La.), cert. denied, 444 U.S. 953, 100 S.Ct. 430, 62 L.Ed.2d 325 (1979). Our examination of the Witherspoon decision discloses that the statute involved therein provided for a bifurcated proceeding similar to ours. Hence, defendant's contention is without substance. The trial judge did not err in denying defendant's motion to quash.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in denying his motions for mistrial based on two questions by the state which made reference to a narcotics transaction. He argues that these questions were references to another crime as to which evidence was not admissible.
Owen Meilleur, Jr. testified that he had lived with Vincent Allnet for about two months prior to the shooting and that during that time defendant had made numerous visits to the house. On redirect examination, the district attorney questioned Meilleur as follows:
Q. Owen, what do you think was the motive for shooting you?
A. Well, I honestly
....

*440 Q. Did you ever see any narcotics transaction
At this point, defendant objected; the objection was sustained. Defendant then moved for a mistrial. Outside the presence of the jury, defendant stated his reasons for the motion:
If the court please, there has been no suggestion of narcotics connected with this trial. This is an attempt on the part of the state to inject prejudice into this case. There has been no allegation, whatsoever, no reason to believe that this defendant has been connected in any way with narcotics. Counsel has earlier stressed the fact in questioning witnesses that there was frequent visits by Floyd Webb to the Allnet home. Now he is trying through this witness to imply that narcotics trade was being conducted there and that Allnet was engaged in it. I don't think it has any place in this case, whatsoever.
(Emphasis added.) The district attorney responded:

That's correct, Your Honor, that Allnet was engaged in some narcotics transactions. He [Owen] saw them in the house. He told them that the next day he was leaving. He was moving out of the house. His feeling is that that's the reason they killed him ... the witness is not going to testify that he ever saw Floyd Webb [defendant] sell any narcotics at that house.

(Emphasis added.) The trial judge denied the motion for a mistrial. When the jury returned to the courtroom, the trial judge, on defendant's motion, instructed the jury to disregard the last question made by the state to the witness.
Later in the trial, during cross-examination of defendant, the district attorney asked:
Isn't it a fact that you all shot Owen Meilleur because he knew something about a narcotics deal?
Before defendant could answer the question, defendant objected and again moved for a mistrial. The objection was sustained; the motion for a mistrial was denied.
At the outset, we note that narcotics transactions or deals may constitute criminal conduct. La.R.S. 40:961, et seq. However, only a remark or comment, made within the hearing of the jury by the district attorney, referring to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible requires that a mistrial be ordered under La.Code Crim.P. art. 770(2).
In the instant case, we do not consider, nor does defendant allege, that the district attorney's questions referring to a narcotics transaction were references to another crime committed or alleged to have been committed by defendant, Floyd Webb. Rather, in light of the context in which they were raised, we conclude that the questions were a reference to another crime alleged to have been committed by Vincent Allnet, the man who shot Owen Meilleur, Jr. Therefore, the questions were not within the scope of La.Code Crim.P. art. 770(2). Even assuming that the questions, concerning Vincent Allnet's motive for attempting to murder Owen Meilleur, Jr. were irrelevant in the instant prosecution of defendant for the murder of Randy Sebble (a witness to the attempted murder of Meilleur), we do not consider that the questions created sufficient prejudice so as to deny defendant a fair trial. La.Code Crim.P. arts. 771, 775. Accordingly, the trial judge did not err in denying defendant's motions for mistrial.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for a mistrial on the basis that the state improperly referred to his silence after his arrest and his failure to testify in his own defense before the grand jury. He argues that the references violated the due process clause of the fourteenth amendment, citing Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
On direct examination, defendant generally admitted his participation in the events *441 of the night in question but denied that he shot Randy Sebble. The essence of his testimony was that he was only an "accidental witness" to the shootings. On cross-examination, he admitted that he did not call the police and report what he had seen that night. He also stated that he did not tell the police what he had witnessed on the next day when he was arrested. When asked if he (defendant) was trying to convince the jury that he was an "innocent bystander," defense counsel objected, stating: "Objection, Your Honor. He didn't say he was an innocent bystander." The objection was sustained. The cross-examination proceeded as follows:
Q. Do you recall that some twenty-one days later, three weeks later, you were given an opportunity to testify before the Grand Jury?
A. That's correct, and Ms. Coon was there.
Q. She was there?
A. Yes, sir.
Q. Did she threaten you or intimidate you in any way?
A. No, sir.
At this point, defendant objected on the ground that since he had a right not to go before the grand jury and testify, the state should not be permitted to raise his failure to testify. The trial judge sustained the objection. Defendant then moved for a mistrial. The motion was denied.
Defendant's first objection was based on the claim that the district attorney improperly stated that defendant testified he was an "innocent bystander" to the events of the evening. The objection was not based on a due process violation regarding defendant's silence at the time of his arrest as set forth in Doyle v. Ohio, supra.[3] This later basis is urged for the first time on appeal. It is well settled that a new basis for an objection cannot be raised for the first time on appeal. State v. Drew, 360 So.2d 500 (La.1978); State v. Kaufman, 331 So.2d 16 (La.), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976). Hence, defendant waived his objection on this ground.
Defendant's second objection that the state's questions referring to his appearance before the grand jury violated his right to due process under Doyle is without substance. Not only do the questions at issue fail to make any direct reference to defendant's refusal to testify before the grand jury, they do not even impart an inference to that effect.[4] Defendant's objection was sustained. The matter was not pursued further.
In sum, the trial judge did not err in denying defendant's motion for a mistrial. Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in overruling his objection to remarks made by the state during closing argument. He argues that the remarks constituted improper closing argument in violation of La. Code Crim.P. art. 774.
Evidence was introduced that the bullet that killed Randy Sebble was fired from defendant's gun. Defendant admitted that *442 he had used his gun to frighten Randy and Owen Meilleur at the murder scene but claimed that after Vincent Allnet shot Owen, he grabbed the gun from his hands and murdered Randy.
Referring to this testimony, the prosecutor stated in closing argument:
You know, I guess it's because I see it all the time and so things sometimes seem comical to me that I know you wouldn't think were funny. But, you know, the little dipsey-doodle over the gun is comical to me. I mean, you have to go through it a lot of times in order to try a song and dance around factors. You got to get a little absurd, you see. You got to get a little absurd. He knew we had the holster; knew it was a 25; that we had the cartridge. We have what we call discovery. We have to give reports and things to the defense, Crime Lab reports and things like that. And he knew that the facts were that there was only one 25 caliber on that scene. There's only one pistol on that scene. So lo and behold, boy, I can just hear right now, "Boy, we got to get that gun out of your hands. We got to get that gun out of your hands." So they do a little dipsey-doodle. Oh, man, snatch the gun right out
At this point, defense counsel objected on the ground that the state was "insinuating we had put words into that witness' mouth like that." The trial judge overruled the objection. Defendant did not request an admonition or move for a mistrial.
La.Code Crim.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
The prosecutor was referring the jury to defendant's explanation of how the murder weapon got from his hands into the hands of Vincent Allnet, the man he (defendant) claimed shot Randy Sebble. We do not consider that these remarks were intended to appeal to prejudice or inferentially cast aspersions on defense counsel; defense counsel was not even mentioned. Rather, we consider that they were intended to convince the jury that defendant's version of the facts was incredulous. Hence, they were within the scope of proper argument. La.Code Crim.P. art. 774. Moreover, it is well settled that, before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Lindsey, 404 So.2d 466 (La.1981); State v. Carthan, 377 So.2d 308 (La.1979). Even assuming the remarks constituted improper argument, we do not consider that they influenced the jury and contributed to the verdict.
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends the trial judge erred in overruling his objection to the state's reference to his right of appeal during voir dire. He further contends that a similar reference was made by the state in closing rebuttal argument.
During voir dire, the state questioned a panel of prospective jurors regarding their appreciation of the obligations of a juror. In emphasizing the tremendous responsibility, the prosecutor sought to make sure that the jurors felt that they could fulfill their responsibility because their actions would be reviewed by this court. Defendant's objection was based on the contention that the state was trying to remove from the jurors the importance of their duty. The contention is without substance. On the contrary, the remarks emphasized the importance of their responsibility.
Defendant's second contention is based on a reference to defendant's right to appeal made by the state during closing rebuttal argument. Defendant did not object *443 to the remarks either at the time of its occurrence or at the conclusion of the state's argument. By his failure to timely object, defendant waived the alleged error. State v. Mallett, 357 So.2d 1105 (La.), cert. denied, 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1978). Furthermore, a prosecutor's argument does not form part of the pleadings and proceedings which may be examined for patent error even in the absence of a formal objection. La.Code Crim.P. art. 920(2); State v. Mallett, supra. Hence, the alleged error is not presented for our review. In any event, the contention is without substance. Considering the context in which the reference to "appeals" was made, it was innocuous. Defendant suffered no prejudice as a result thereof.
Assignment of Error No. 7 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, C. J., concurs, disagreeing with the treatment of Assignment # 3.
ISRAEL M. AUGUSTINE, J. Ad Hoc, dissents.
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit, and Judges Philip C. Ciaccio and Israel M. Augustine of the Court of Appeal, Fourth Circuit, participated in this opinion as associate justices, ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] Richard Allnet, Vincent Allnet and Kim Kohler were charged in the same indictment with Webb for having participated in the same offense. The trial judge granted Webb's motion for severance. Webb was tried separately.
[2] Defendant has neither briefed nor argued Assignments of Error Nos. 2 and 4; therefore, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[3] In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that the use for impeachment purposes of petitioners' silence, at the time of arrest after receiving Miranda warnings, violated the due process clause of the fourteenth amendment.
[4] In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), petitioners, in addition to claiming that reference to their silence at the time of arrest and after receiving Miranda warnings violated due process, also claimed constitutional error because each of them was cross-examined by the prosecutor as to why he had not told the exculpatory story at the preliminary hearing or any other time prior to trial. The Court, in footnote 6, stated that those averments of error presented different considerations from those raised in the post-arrest claim and expressly declined to reach those additional issues. Our research in the instant case has failed to locate any cases wherein Doyle has been extended to references by the state of defendant's failure to testify in his own defense before the grand jury and none has been pointed out to us. In view of the disposition of this case, we find it unnecessary to reach this issue.