**Floyd WEBB, Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.**

No. 85–3021
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1985.

Floyd Webb, pro se.

Tom W. Thornhill, Asst. Dist. Atty., Slidell, La., for respondents-appellees.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant, Floyd Webb, appeals *pro se* the denial of his habeas corpus petition under 28 U.S.C. § 2254, seeking to invalidate his Louisiana conviction, and life imprisonment sentence, for the first degree murder of Randy Sebble. Appellant claims error was committed when the prosecution improperly commented on his post-arrest silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). He also claims error was committed by improper questions of the prosecution which inferred the commission of uncharged crimes. We affirm the district court's denial of relief.

**FACTS AND PROCEEDINGS BELOW**

The facts relevant to our determination of this appeal, as reflected by the prosecution's evidence in the state trial, are as follows. On July 31, 1980, at about 9:00 p.m., Owen R. Meilleur, Jr., a seventeen year old, was approached by appellant in the parking lot of a Fat City lounge in Jefferson Parish, Louisiana. Appellant, who had jumped out of a car driven by Vincent Allnet (Meilleur's uncle), chased, caught, and beat Meilleur. Appellant then forced Meilleur into a car where Vincent and Richard Allnet, and Kim Kohler were sitting. Once inside the car, Meilleur noticed that Randy Sebble, a sixteen year old who worked for Vincent Allnet, was also in the car and that he had also been beaten.

The group then drove toward nearby Slidell, and appellant and Vincent Allnet repeatedly accused Meilleur of having stolen their jewelry and threatened to kill him if it was not returned. After stopping for some beer, Vincent Allnet drove the car to a marshy area in the St. Tammany Parish region on a small shell road off the main highway and parked the car. Vincent Allnet forced Meilleur from inside the car to the front of the car where Sebble was already standing. Appellant and Vincent Allnet again beat the boys. During this commotion, appellant fired a pistol toward Meilleur's feet. Meilleur fell to the ground and soon looked up to see both Vincent and Richard Allnet standing over him with shotguns. Vincent Allnet shot Meilleur. Meilleur pretended to be dead and lay still, and during this time he heard appellant say something about leaving no witnesses and saw him shoot Randy Sebble with the pistol. Appellant and the other three men drove off but returned a few minutes later to see if the two were dead. One of the four kicked Meilleur and Sebble. After the

car sped away, Meilleur was able to drag himself to the side of the main highway and eventually was aided by a passing motorist who transported him to a hospital. Randy Sebble died from a single gunshot wound.

Appellant maintains, contrary to anything stated above, that he shot the .25 caliber pistol into the ground at Meilleur's and Sebble's feet, but that he did not shoot Sebble. He claims that after Meilleur was shot Vincent Allnet grabbed his pistol. Appellant claims that he returned to the car and thus he could not see what then transpired. A Louisiana state jury subsequently convicted appellant of first degree murder and sentenced him to life imprisonment without parole. The conviction and sentence were affirmed by the Louisiana Supreme Court on direct appeal. *State v. Webb*, 419 So.2d 436 (La.1982).

Appellant claims two types of error: that there was improper comment upon his post-arrest silence in violation of *Doyle v. Ohio*, 96 S.Ct. at 2244–45, and that improper questions as to evidence of other crimes prevented appellant from obtaining a fair trial. As to the *Doyle* claims, appellant maintains that in four instances the prosecution improperly commented on his post-arrest silence. The first two instances involved alleged improprieties during cross-examination of appellant. In neither case was a proper objection made at the time of the questioning. The third instance of a claimed *Doyle* violation also occurred during cross-examination of appellant when the prosecution apparently began laying a foundation for questions which would inquire into appellant's silence before a grand jury. In this instance, however, a proper objection was lodged and sustained, and the questions then ceased. The last instance of the alleged *Doyle* violation occurred, appellant claims, when the prosecution was allowed to comment improperly upon appellant's post-arrest silence during closing argument. No objection was lodged.

Appellant's second claim is that improper comment was allowed upon inadmissible other crimes evidence during questioning by the prosecution. The prosecution made two attempts at such questioning. The questions were objected to, and the objections were appropriately sustained. A motion for a mistrial was denied.

After the return of the guilty verdict, appellant proceeded with direct appeals through the Louisiana state courts. All of the above claims were raised on direct appeal except for the alleged *Doyle* violation that occurred during the prosecution's closing argument. No relief was granted. Appellant then went through state habeas proceedings, where again no relief was granted. After unsuccessfully raising these claims before the federal district court, appellant now seeks review in this Court. We affirm.

## DISCUSSION

*Post-Arrest Silence Claims*

■ In *Doyle v. Ohio*, 96 S.Ct. at 2244–45, the Supreme Court proclaimed a general rule that the prosecution cannot comment on an accused's post-arrest silence. *Id.* at 2245 (expanding on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966) by stating that "while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings"). This decision was rooted in earlier post-arrest silence constitutional law. *Id.*[1]

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 2506–09, 53 L.Ed.2d 594 (1977), the Supreme Court held that federal habeas relief from state convictions will not be available on the basis of claims which are barred under state law because of failure to comply with state contemporaneous objection and similar procedural rules, unless the habeas claimant shows cause for his failure to timely object and actual preju-

---

1. We note, however, that *pre*-custody (arrest) silence is not a constitutionally forbidden subject of inquiry. *See Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

dice. *See* Wright, Miller & Cooper, *Federal Practice and Procedure*, § 2266, 679–682 (1978) (discussing the widespread and immediate impact of *Sykes* on federal habeas corpus proceedings).

This Court has interpreted *Sykes* to mean that the following analysis must be made before habeas relief is granted:

"First, it must decide whether the state court applied the procedural bar in denying the petitioner's federal constitutional claim. Second, assuming that a state court applied the procedural bar, the federal court must consider whether there was adequate cause for the petitioner's failure to comply with the procedural rule. And third, assuming adequate cause, the federal court must decide whether the petitioner suffered actual prejudice from the alleged constitutional violation before habeas relief may be granted." *Preston v. Maggio*, 705 F.2d 113, 115 (5th Cir.1983).

Consequently, our first inquiry is into whether appellant's actions at the trial constituted a Louisiana procedural waiver, for

2. The first instance of the supposed *Doyle* violation occurred during cross-examination of appellant, as follows:

"Q. You were arrested the next day on August 1, is that correct?
"A. That's correct.
"Q. Did you at that time tell the police what a terrible thing you had witnessed?
"A. No, sir.
"Q. Why?
"A. I didn't. I did not make any statements because I was being arrested for the first degree murder and attempted murder, and I understand they read me my rights and I wished to hold the Fifth Amendment and not say anything until I'd spoken to a counsel.
"Q. But aren't you trying to convince this jury right now that you were just an innocent bystander?
"A. Well, I'm saying what happened. That I did anything, that's what you're saying.
"Q. Isn't that what you're trying to say, or am I misunderstanding you?
"MR. DYMOND: Objection, Your Honor. He didn't say he was an innocent bystander.
"THE COURT: Sustained.
"THE WITNESS: You're the one saying that. I'm telling the jury what happened and that is it."
Shortly thereafter, the second incident occurred, also during cross-examination of appellant, as follows:

only if the state courts dealt with the merits of the claim is it reviewable in federal court. *Miller v. Estelle*, 677 F.2d 1080, 1084 (5th Cir.), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 494, 74 L.Ed.2d 636 (1982).

In the first two instances of the alleged *Doyle* violations, the ones referring to post-arrest silence soon after the initial arrest [2] and not to silence before the grand jury, the Louisiana Supreme Court applied its contemporaneous objection rule to bar procedurally appellant's claims from being heard on their merits. On appellant's direct appeal from his state court conviction, the Louisiana Supreme Court held that because these objections were not raised at the time of trial, the contemporaneous objection rule prevented their consideration. *State v. Webb*, 419 So.2d at 440–41. This is the same type of procedural bar as was ruled on in *Sykes*. Appellant must show cause why he did not object during the trial. *Sykes*, 97 S.Ct. at 2506–09. As appellant has shown no adequate cause, these claims afford no ground for relief.[3]

"Q. And is it correct, as the police say, when they came to arrest you about 5:00, you were sleeping on the sofa?
"A. That's correct.
"Q. Do you recall saying anything at all to the St. Tammany Parish Sheriff's officers after you were arrested?
"A. I can't recall, because they more or less told me that I was being—that I was being charged with first degree murder and first degree attempted murder, and I didn't have nothing to say.
"Q. You don't recall, or do you recall saying anything to the effect that 'I wasn't with the people. I wasn't with those people.'?
"A. I told them I had no statements to make at this time."
There was no defense objection to this questioning. The objection to the earlier cross-examination did not go to the constitutional violation or raise the question of post-arrest silence.

3. Appellant was represented by competent counsel, who obviously knew how to object. The *Doyle* rule had been "on the books" for several years at the time of the state trial, and hence was not then a novel claim within the rule of *Reed v. Ross*, —— U.S. ——, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). *See Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

■ Appellant also claims error was committed when the prosecution asked questions that were apparently leading up to whether appellant had testified before the grand jury, despite his timely objection which the trial court sustained.[4] In this line of questioning, however, it was not the prosecution which commented upon the silence of appellant at the grand jury, but appellant through his own objection. As the record stands, the questions by the state simply do not contain an inference as to appellant's post-arrest, grand jury silence. The Louisiana Supreme Court properly noted that these questions not only fail to refer to appellant's silence before the grand jury, "they do not even impart an inference to that effect." *Webb*, 419 So.2d at 441. We agree.

The last *Doyle* violation claimed by appellant is that during the prosecution's closing arguments an improper comment was made on his *Doyle*-protected post-arrest silence.[5] This issue was not raised on direct appeal in the Louisiana courts, but was argued in both the state and federal habeas proceedings. Since the Louisiana courts dismissed the habeas petitions as having been already decided on the merits on direct appeal, there is no express state court ruling on this issue.

When there is silence in the state courts as to the basis for the denial of a claim, this Court has adopted certain guidelines to aid in determining whether the claim has been rejected on the merits, so that the *Sykes* bar does not apply, or for procedural default, so that *Sykes* is applicable. *See Preston*, 705 F.2d at 116. This Court applies essentially the same considerations to a case where the state courts were silent as to a case where a state court's findings have been less than explicit. *Id.* These factors include:

> "[W]hether the state court has used procedural default in similar cases to preclude review of the claim's merits, whether the history of the case would suggest that the state court was aware of the procedural default, and whether the state court's opinions suggest reliance upon procedural grounds or a determination of the merits." *Id.* (citing *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777 (1979)).

Consequently, this Court's first line of analysis should be to determine how the state courts apply their various procedural default rules to particular cases. *See, e.g., Stokes v. Procunier*, 744 F.2d 475, 481 (5th Cir.1984) (determining that Texas courts stringently apply the contemporaneous objection rule in the context of improper identification); *O'Bryan v. Estelle*, 714 F.2d 365, 384–85 (5th Cir.1983) (finding that Texas courts strictly apply procedural default rules to objections to the charge); *Preston*, 705 F.2d at 117 (finding that the Louisiana

---

4. The following is the cross-examination by the prosecution of appellant on this particular matter:

> "Q. So you did not tell the police what you had witnessed?
> "A. No, sir.
> "Q. Do you recall that some twenty-one days later, three weeks later, you were given an opportunity to testify before the Grand Jury?
> "A. That's correct, and Ms. Coon was there.
> "Q. She was there?
> "A. Yes, sir.
> "Q. Did she threaten you or intimidate you in any way?
> "A. No, sir.
> "MR. DYMOND: Your Honor, I object to this. This witness has a perfect right on the advice of his attorneys not to go before a Grand Jury and testify. And to get up here

before this jury and criticize him for that or cross-examine him on his not having testified, I think it's not only inadmissible, but reprehensible. I object to it.
> "THE COURT: I sustain the objection.
> "MR. DYMOND: At this time, Your Honor, and on that basis, I again move for a mistrial.
> "THE COURT: Alright, the Court is going to deny your motion."

5. During the prosecution's closing arguments, the prosecutor argued as follows:

> "As a matter of fact, the reason only Floyd Webb is sitting over here now is because a motion to sever was filed. Floyd Webb didn't make a statement. The others did. They were contradictory. The statements were contradictory."

Appellant did not object to this argument.

courts strictly apply procedural default to petit jury claims).

In this case, the relevant inquiry is how the Louisiana state courts apply their procedural default rules for objections to closing arguments. We find that Louisiana strictly applies its contemporaneous objection rules to these claims. *See, e.g., State v. Carthan,* 377 So.2d 308, 315 (La.1979); *State v. Whitmore,* 353 So.2d 1286, 1293 (La.1978); *State v. Craddock,* 435 So.2d 1110, 1121 (La.App.1983). Consequently, in interpreting the state's silence on this claim, we find that Louisiana courts have applied their contemporaneous objection statute and barred a merits review of such claims. *See* LSA–C.Cr.P. art. 841. Moreover, since this claim was not raised on direct appeal, there is even a further reason for procedural bar. *See* LSA–C.Cr.P. art. 844; *State v. Webb,* 419 So.2d at 438 n. 2; *State v. Mitchell,* 356 So.2d 974, 976 n. 1 (La.), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978). It is inconceivable that the Louisiana courts, which denied relief on direct appeal because of lack of proper objection in the trial court, would grant relief on a similar claim which not only was not raised at trial, but was also not raised when the case was reviewed on direct appeal. Clearly, we must presume that Louisiana has applied its well-settled rule of procedural bar. *See Rollins v. Maggio,* 711 F.2d 592

(5th Cir.1983); *Stokes v. Procunier,* 744 F.2d at 480. Again, appellant has shown no sufficient cause for his failure to object (*see* note 3, *supra.*) [6]

### Other Crimes Evidence

Appellant's second claim is based upon the alleged impropriety of twice referring to a narcotics deal during the state's cross-examination of appellant.[7] Dealing in or with narcotics is illegal under Louisiana law. LSA–R.S. 40:961, *et seq.* However, both times that the prosecution attempted to get in this evidence of a narcotics connection, appellant objected and the objection was sustained. Despite these sustained objections, the Louisiana Supreme Court held that these questions referred to crimes that were allegedly committed by Vincent Allnet, not appellant, and hence were not within the statute (LSA–C.Cr.P. 770(2)) requiring that a defense motion for mistrial be granted when there is a reference to "[a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." *Webb,* 419 So.2d at 440. The court, alternatively held that regardless of whether this evidence was admissible, the questions did not create sufficient prejudice to mandate a new trial. *Id.*

Regardless of whether the evidence was admissible under Louisiana law,[8] our inquiry should only focus on whether the

**6.** Although the state may not have adequately raised the *Sykes* procedural default claim in the district court, that court itself addressed the issue, and barred relief thereunder. Consequently, this Court may sustain the decision below on *Sykes. See Wiggins v. Procunier,* 753 F.2d 1318, 1321 (5th Cir.1985).

**7.** Owen Meilleur, on re-direct, was questioned as follows by the prosecution:
"Q. Owen, what do you think was the motive for shooting you?
"A. Well, I honestly—
"...
"Q. Did you ever see any narcotics transaction—"
At this point appellant objected, and the objection was sustained. Appellant moved for a mistrial which was denied. The prosecution claims that the questions implicate Vincent Allnet in narcotics, but not appellant, because Meilleur had lived with Vincent Allnet for approximately

two months in the past. The prosecution stated that it was not trying to tie appellant to the narcotics, only Vincent Allnet. Appellant again moved for a mistrial which was denied. However, on appellant's motion, the jury was instructed to disregard the previous question.
Sometime later in the trial during the cross-examination of appellant the prosecution asked: "Isn't it a fact that you all shot Owen Meilleur because he knew something about a narcotics deal?" Before appellant answered the question, his counsel objected and moved for a mistrial. The objection was sustained; the motion for a mistrial was not.

**8.** The court did not expressly rule on whether the evidence was admissible. It could, of course, be inadmissible, even though not within the mandatory mistrial statute since not referring to crimes committed by the defendant.

denial of a mistrial in these circumstances rendered the trial fundamentally unfair in a constitutional sense. *See Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983); *Panzavecchia v. Wainwright*, 658 F.2d 337, 340 (5th Cir.1981). Appellant's trial was not fundamentally unfair. In Louisiana, evidence of other crimes can be admitted to show intent, knowledge or system, *see State v. Baker*, 452 So.2d 737, 744 (La.App.1984), but apparently not to show motive. Federal courts, on the other hand, do allow evidence of other crimes to show a specific motive. *See* Fed.R.Evid. 404(b). If the evidence arguably is admissible were the case tried in federal court, we cannot see how the admission of this evidence in a Louisiana state court, even if wrongly under state law, constitutes "fundamental unfairness," such as to violate the Constitution. Whatever this term means, it must stand for more than this.

■ It is also doubtful whether unanswered questions constitute reversible error. *See United States v. Beckett*, 706 F.2d 519, 521 (5th Cir.1983). The appropriate remedy for such questions is normally an instruction to the jury. *See United States v. Bernes*, 602 F.2d 716, 721 (5th Cir.1979). Here the objections were sustained, and no instructions to the jury were requested. This Court has ruled that such an error is harmless where the question could have at most a "slight effect." *Beckett*, 706 F.2d at 521. Due to the strength of the other evidence admissible against appellant, including eyewitness testimony, the same guilty verdict would in all likelihood have resulted. Here the charge was cold-blooded murder, supported by eyewitness testimony and strong physical corroborative evidence. That appellant brutally mistreated Sebble and Meilleur was not really disputed. Appellant merely claimed that one of the others present fired the shot that killed Sebble. In these circumstances, vague suggestions of possible narcotics transactions implicating the others as much as appellant can hardly have been "a crucial, critical, highly significant

factor." *Milton v. Procunier*, 744 F.2d 1091, 1097 (5th Cir.1984). Appellant's complaint in this respect must be rejected.

Having rejected each of appellant's contentions, the judgment of the district court is accordingly

AFFIRMED.