Ronald H. **LOMAX**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 83–1166.

District of Columbia Court of Appeals.

Submitted March 18, 1986.

Decided June 5, 1986.

---

Richard K. Gilbert, Washington, D.C., appointed by this court, was on brief for appellant.

Joseph E. diGenova, U.S. Atty., Robert M. Morgan, Michael W. Farrell, Judith

---

**3.** We refer to the facts outlined in *Wright, supra,* 505 A.2d at 471.

Hetherton, and Daniel S. Friedman, Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before NEBEKER, MACK and ROGERS, Associate Judges.

PER CURIAM:

Appellant appeals from his conviction by a jury of possession of a controlled substance (dilaudid), D.C.Code § 33–541(d) (1985 Supp.), on the ground that the trial judge abused his discretion when, immediately before closing arguments were to begin, he announced that such arguments would be limited to fifteen minutes a side. We find no abuse of discretion; accordingly, we affirm.

I

Officer Sovonick, the government's primary witness, testified he and Officers Busch and Eisenhauer began an undercover drug operation by prerecording the serial numbers of a twenty, ten and five dollar bill. Sovonick went by motorcycle to the 900 block of Twelfth Street, N.W., between I and K Streets, an area known for dilaudid sales. There Sovonick saw appellant who asked Sovonick, "[w]hat are you looking for?" Sovonick replied "number four," which is a street term for a dilaudid or hydromorphone pill. At appellant's suggestion, Sovonick went to Twelfth and N Streets where appellant met him and then left briefly, telling Sovonick to wait for him. Appellant returned after five minutes, and handed Sovonick a yellow pill marked as dilaudid commonly is marked. Sovonick paid appellant thirty-five dollars in prerecorded money, and appellant began walking south on Twelfth Street. He was wearing a blue jogging suit with a light-colored pull-over shirt underneath.

Sovonick returned to Tenth and K Streets, and described the seller to Officers Busch and Eisenhauer, who were in a police car. The three proceeded toward Twelfth Street. Sovonick saw appellant about three-and-a-half blocks from where they had parted. As appellant approached the northeast corner of Twelfth and K Streets, Sovonick confirmed his prior identification of appellant as the seller. Busch and Eisenhauer arrested appellant, searched him and found the prerecorded five dollar bill. The other prerecorded bills were not recovered.

Busch corroborated Sovonick's testimony of the prerecording of the bills, the arrest and search, and the match between Sovonick's description of the seller and appellant. He also testified about the chain of custody of the seized five dollar bill and the exhibit listing the serial numbers of the marked bills. Eisenhauer gave substantially the same testimony as Busch, and described the chain of custody of the seized dilaudid pill.

Defense witness Roberta Lomax, appellant's sister, testified appellant had spent the day at her house after being released from prison on work release. Berta Boston, appellant's second cousin, arrived at Roberta Lomax's house shortly after 6:00 p.m., and the three went to another cousin's apartment building, where appellant's mother gave him car fare for his return trip to prison. Then appellant and Roberta went to a liquor store at Eleventh and P Streets. Appellant bought a beer and began walking south on Twelfth Street toward the METRO.[1] Neither defense witness saw appellant walk with anyone or exchange anything with anybody.[2]

The trial judge informed counsel immediately prior to closing arguments that their closing arguments would be limited to fifteen minutes. Defense counsel requested thirty minutes. He explained that he had not emphasized the facts during cross-ex-

---

1. Officer Busch testified he did not see appellant carrying liquor at the time of his arrest.

2. Roberta Lomax testified she did not remember what appellant was wearing that day but that he did not own a blue jogging suit. She admitted, however, that she was not completely familiar with his wardrobe.

amination because, as a tactical matter, he wished to do so in closing argument.[3] He offered, however, to try to limit his argument to twenty minutes. The court refused to modify its ruling, commenting that the trial was short, consisting essentially of only two witnesses and that "fifteen minutes is enough to hit all of the salient points." Defense counsel noted an objection, which the trial court acknowledged and advised counsel that if he exceeded the time limitation the court would interrupt his argument. After completing his closing argument, the record does not indicate defense counsel requested additional time or indicate to the judge that he had been unable properly to present his client's case to the jury in the allotted time.

## II

■ The government contends that appellant did not preserve his objection to the trial judge's limitation on closing argument because he failed, after using the time allotted, to request more time for specific reasons and have his request denied by the judge. In support of its position that such a procedure is required, the government relies on *Batsell v. United States*, 403 F.2d 395, 401 (8th Cir.1968), *cert. denied*, 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785 (1969); 3 WHARTON, *Criminal Procedure*, § 522 at 450 (12th ed. 1975); Annot., 6 A.L.R.3d 604, 634 (1966). Appellant responds that the government's position is unreasonable since defense counsel, met by the surprise announcement of the trial

judge, concisely stated his reasons for requesting more time, the trial judge heard and rejected his request, and counsel thereupon noted an objection which the trial judge acknowledged, and thereafter attempted to fulfill his obligations competently to represent his client and to comply with the trial judge's ruling. Appellant argues that many of the cases relied on by the government are distinguishable. In some cases no objection was made to the trial judge's limitation on closing argument. *See United States v. King*, 532 F.2d 505, 510 (5th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976); *Barnes v. State*, 269 Ind. 76, 378 N.E.2d 839, 844 (Ind.1978); *State v. Robinson*, 325 S.W.2d 465, 471 (Mo.1954). In others, an objection was made, but the cases are 90 to 59 years old and each side was given at least one hour for argument. *See Morrison v. State*, 174 Ark. 1180, 297 S.W. 830, 832 (1927); *Crawford v. State*, 112 Ala. 1, 21 So. 214, 221 (1896); *Williams v. State*, 14 Okla.Crim. 100, 167 P. 763, 766 (Okla.Cr. App.1917). Furthermore, a federal case from the same period, *Rossi v. United States*, 9 F.2d 362, 367–68 (8th Cir.1925), held that where defense counsel asked for thirty minutes for closing argument but only fifteen minutes was granted, counsel's notation of an exception preserved the issue for appeal.[4] Appellant also suggests that adoption of the government's position could create mischief.[5]

In the instant case the trial judge was advised of the reason for defense counsel's

---

**3.** Appellant notes, citing GOLDSTEIN & LANE, *Trial Technique*, § 19.20 at 29 (2d ed. 1969), that defense counsel followed a trial tactic encouraged by experts.

**4.** Appellant argues, and we agree, that in *United States v. Bernes*, 602 F.2d 716 (5th Cir.1979), the court seems most concerned by the fact defense counsel did not formally request additional time while the trial judge could have ruled on it, but "waited until after the jury had retired to raise the issue." *Id.* at 722. In that case the trial judge had allowed more time for argument than was his usual practice and also had permitted defense counsel to exceed the time limit.

**5.** Appellant suggests mischief would arise under the government's rule because counsel upon be-

ing presented with an unreasonable time limitation on closing argument would be faced with three choices: (1) to conform closing argument to the limitation and end the argument with the most dramatic point and thus be deemed to have waived the objection regardless of the merits; (2) to give an argument but stop before its conclusion and risk depriving the jury of critical elements of the argument if the trial court should refuse to grant additional time to complete the argument; or (3) to give an argument which reached its dramatic point at the conclusion of the allotted time and then ask for more time which, if granted, would make the argument disjointed and dilute its impact.

request for additional time for closing argument. Nevertheless the judge made it clear he would not grant more time. Counsel noted his objection and then proceeded to present a closing argument which conformed to the judge's ruling. Requiring counsel to do more, especially where the trial judge has not advised counsel in advance that the time for closing argument would be limited,[6] would serve no useful purpose. Accordingly, we hold that appellant has preserved his objection for appeal.

III

■ The trial judge has considerable discretion in the management of a trial. *See Oesby v. United States*, 398 A.2d 1, 10 (D.C.1979). In a relatively simple prosecution, it is not unreasonable for counsel to anticipate the trial judge will assume, unless advised to the contrary, that an extended closing argument is not required. Obviously it would be preferable for the trial judge to alert counsel as early as possible of any time limitations on closing argument. In the absence of such warning, counsel may be at a disadvantage if unable to change plans instantly and therefore unable to make as effective an argument to the jury. However, we find no such disadvantage in the instant case, and no abuse of discretion by the trial judge.

In an attempt to show prejudice, appellant concedes that defense counsel's closing argument was not facially deficient, but contends counsel would have elaborated on major points and coordinated them more closely with the specific instructions had he additional time. He maintains that the ina-

bility to do so prejudiced appellant because in a close case involving credibility, where the evidence pitted Officer Sovonick's testimony against appellant's, there is substantial benefit in emphasizing positive supporting testimony even when it does not completely exculpate the defendant. With more time for closing argument appellant suggests that defense counsel would have (1) emphasized the general instruction on credibility of police officers; (2) emphasized specific facts in the defense case, such as the fact that appellant did not own a blue jogging suit, which the officer said he had seen, and was carrying a beer in his hand, in contrast to the officers' testimony they did not see anything in his hands; and (3) elaborated on appellant's movements which, according to the defense witnesses, would have innocently accounted for his location and direction of movement at the time of his arrest, instead of limiting his argument to emphasize only the improbability of the police officers' version of appellant's movement. We are unpersuaded these elaborations could have made a difference in the outcome of the trial.

We do not have complex factual circumstances in the instant case. The trial lasted less than one trial day.[7] The only issue at trial was misidentification. Contrary to appellant's contention, this was not a close case as to credibility. Officers Busch and Eisenhauer corroborated Officer Sovonick's testimony as to time, place, identification, arrest and search. Defense counsel was in no way inhibited in presenting the testimony of his witnesses who gave an innocent explanation for appellant's presence at the scene of arrest. In addition he pointed out to the jury the inconsistencies by the government's witnesses.[8]

---

6. *See, e.g., State v. Willis*, 37 Wash.2d 274, 223 P.2d 453, 456–57 (Wash.1950) (reversal mandated where counsel apparently believed no limitation would be placed on argument).

7. The jury was not sworn until after 11:20 a.m. August 3, 1983, and testimony concluded around 10:30 a.m. August 4, 1983.

8. In closing argument, defense counsel focused on the jury instructions, the burden of proof,

the presumption of innocence, the reasons the defense case was not a perfectly planned story, the prosecutor's argument and likely rebuttal, reasonable doubt, and the lack of the original version of the document listing the serial number of the marked money. In addition, defense counsel discussed the implausibility of the government's story that appellant, on his second day of work release, would be able so quickly to make contact with a drug supplier, and then to

The trial judge did not cut off defense counsel's closing argument, and the only interruption occurred when the prosecutor objected to an alleged misstatement and a brief bench conference was held. The court gave the standard instructions, including those relating to credibility.[9]

*Affirmed.*

arrange for a supplier several blocks away from the point of his contact with a prospective purchaser. Counsel also noted the doubtfulness of the undercover officer's identification testimony since he claimed he was able to make eye contact while wearing dark sunglasses, and had failed to notice that appellant had a limp when he walked.

9. We are also unpersuaded by appellant's argument that the limitation on closing argument

came close to causing ineffective assistance of counsel. *See Strickland v. United States,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (two prong test for determining ineffective assistance of counsel, second requiring prejudice as would have affected the outcome of the trial).

