**FEDERAL TRADE COMMISSION,**
Petitioner-Appellee,

v.

Emanuel GLADSTONE, President, Southern Cross Discount Co., Inc.,
Respondent-Appellant.

No. 71–1672.

United States Court of Appeals,
Fifth Circuit.

Nov. 4, 1971.

Martin M. Pollock, James B. Gurley, Atlanta, Ga., for respondent-appellant.

Harland F. Leathers, Chief, General Litigation Sect., Civil Div., Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., Jos. Martin, Jr., Gen. Counsel, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Charles C. Moore, Jr., Atty., FTC, Washington, D. C., for petitioner-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Emanuel Gladstone, President of the Southern Cross Discount Company, Inc., appeals from a judgment of the District Court for the Northern District of Georgia holding him in wilful criminal contempt of court and sen-

tencing him to imprisonment for ten days. We affirm the judgment of the district court.

## I.

This criminal contempt conviction grows out of an investigation of activities of Southern Cross by the Federal Trade Commission. In the course of that investigation, the Federal Trade Commission issued a subpoena duces tecum to Gladstone requiring that he appear at the Commission's Atlanta office on November 19, 1969, to testify and that he produce documents described in the fifteen specifications attached to the subpoena. Gladstone failed to appear and to produce the requested documents on the specified date, whereupon the Commission petitioned the district court for an order enforcing the subpoena.

The district court held two hearings on the enforcement petition. At these hearings Gladstone objected to enforcement principally on the ground that compliance would be expensive to his company and requested reimbursement from the government for the costs of compliance. After the close of the hearing, the district court issued an order requiring that Gladstone produce the material described in the specifications. Gladstone neither appealed this order nor sought a stay pending appeal.

During the next three days, Gladstone, assisted by Southern Cross employees and by temporary employees from Manpower, Inc., removed numerous documents from the subpoenaed files and destroyed them. Upon learning of this removal and destruction of documents, the Commission filed a "Motion for Show Cause Hearing for Contempt Citation". After the hearing, the court concluded that Gladstone had wilfully violated the court's order by destroying subpoenaed documents and sentenced him to 10 days imprisonment for criminal contempt.

## II.

Appellant's initial argument on appeal is that the district court erred by plac-ing an unreasonable interpretation upon the meaning of specifications 8 and 9 of the subpoena duces tecum. Gladstone contends that under a proper interpretation of the subpoena, he complied with its terms and should not have been held in contempt.

Specifications 8 and 9 of the subpoena required the production of:

8. All files showing all contracts, credit applications, promissory notes, mortgages and other documents on customers who purchased the aluminum siding, swimming pool and carpeting at the advertised prices of Southern Cross Discount Company, Inc. during that period of time from January 1, 1968, to the date upon which return is made to this subpoena.

9. The originals or, in lieu thereof, copies of all contracts, credit applications, promissory notes and mortgages relating to every job done by or for Southern Cross Discount Company, Inc., during the period of April 1, 1968 to September 30, 1968.

The district court interpreted specification 8 as requiring the production of *all* documents in the customer files. Relying on the language of the specification requiring the production of *"all files showing all contracts, credit applications, promissory notes, mortgages and other documents* on customers," the court ruled that the removal of any item from the files in question amounted to a violation of its order.

It is uncontroverted that Gladstone ordered the removal of numerous documents from these files. At the contempt hearing, Gladstone testified that he hired men from Manpower, Inc., and instructed them to go through the files removing all of their contents except three items—credit applications, worksheets, and contracts. A Manpower, Inc., employee testified that Gladstone taped examples of these three items on the wall where the men were working to guide them.

The principal documents which appear to have been removed from the files were so-called "Contract Adjustment Memos". These were documents which recorded modifications of customer contracts with respect to price. The Federal Trade Commission also alleges that customer promissory notes were removed from the files. By Gladstone's own admission, there is no way of knowing precisely which documents were in fact removed. We know only that substantial quantities of documents were removed and that Gladstone's employees were instructed to leave three particular types of documents in the files.

Gladstone does not dispute these facts. However, he does contend that the removal of these documents was in no way inconsistent with a good faith effort on his part to comply with the subpoena. Gladstone asserts that his purpose in removing the Contract Adjustment Memos was to rid the files of intra-office memoranda which he did not believe to be subpoenaed and which duplicated information already contained on the file jacket.[1] With respect to the promissory notes, Gladstone concedes that, even though specifically subpoenaed, they were not one of the forms which he taped on the wall with instructions that they be left in the files. His explanation for this omission is that the promissory notes would not ordinarily have been in these files anyway since in the normal course of his business, the notes would be sent to the finance company which discounted them. However, evidence was presented by the Federal Trade Commission which indicates that at least a few promissory notes were torn from the files. Such removal would constitute a violation of the court's order even if, as appellant asserts, most files did not contain promissory notes. Certainly the fact that most promissory notes were not kept in the files would not justify the destruction of those promissory notes which were in fact contained in the files.

The district court rejected Gladstone's explanations for the removal of large quantities of documents from the files. The court, in its findings of fact, determined that Gladstone's explanation that he merely sought to remove unsubpoenaed documents and avoid duplication was "unbelievable". Viewing the record in its entirety we cannot conclude that this finding was erroneous. The plain, unambiguous language of specification 8 required the production of all files and all documents in those files. Arguably the specification was overbroad since it requested all documents within the files including ones with no conceivable relevance to the Federal Trade Commission's investigation. If this were the case, however, the appropriate remedy was a petition to the district court for clarification of its order or an appeal from the order to this court. Instead, Gladstone chose to take matters into his own hands. Moreover, it should be noted that Gladstone did not merely remove from the files those documents which he believed to be irrelevant to the Federal Trade Commission's investigation. He chose instead to destroy the documents, thus placing the information irretrievably beyond the Federal Trade Commission's reach. In our view, this destruction of the documents was itself inconsistent with any claimed good faith compliance with the court's order.

### III.

We turn now to Gladstone's second contention on appeal which is that the

---

1. The FTC disputes the classification of the Contract Adjustment Memos as intra-office memoranda. These documents reflected agreements to modify customer contracts and bore the legend, "Attach to original contract". The FTC argues that these Memos were part of the customer contracts and as such were subpoenaed under the language of specification 8 requiring the production of "all contracts". The dispute is inconsequential, however, since in any event the memos were subpoenaed under the "other documents" language of the specification.

conviction is invalid because of a failure by the court to comply with the notice requirements of Rule 42(b) of the Federal Rules of Criminal Procedure. That rule requires that criminal contempts be prosecuted only on notice and that the notice "state the essential facts constituting the criminal contempt charged and describe it as such * * *".

Gladstone attacks the sufficiency of the notice given him for its failure to clearly designate that he was to be prosecuted for "criminal" contempt. The contempt prosecution was initiated by a motion from the Federal Trade Commission requesting a show cause hearing. The motion alleged that Gladstone had caused "a large portion of the books and records ordered to be produced" to be "destroyed * * * in direct and contumacious disobedience" to the court's order. Upon receipt of the motion, the district court issued an order requiring that Gladstone appear and show cause "why he should not be adjudged in contempt of court". The court's order did not, however, use the word "criminal". Gladstone contends that this omission made the notice defective under Rule 42(b).

■ Prior cases construing the requirements of Rule 42(b) make it clear that this argument must be rejected. The same issue was raised in the leading case of United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), in which the Supreme Court held that Rule 42(b) does not impose a rigorous requirement that the word "criminal" always be included in the notice given the contemnor. In that case, as in the one at bar, the motion and the order to show cause fully described the events which formed the basis of the contempt charge, but failed to use the word "criminal". The court concluded that notice was sufficient under Rule 42(b). Similarly, in

Stewart v. Dunn, 5 Cir., 1966, 363 F.2d 591, this court rejected the argument that reversal is required solely because the notice given the contemnor omits the word "criminal". *See also* Yates v. United States, 10 Cir., 1963, 316 F.2d 718; but see 3 C. Wright, Federal Practice & Procedure, § 710, at 174 (1969).

The *Mine Workers* case teaches that reversal is required only where there is a showing that there was prejudice to the contemnor as a result of the failure to clearly designate the nature of the contempt proceeding. In the case at bar, we entertain no serious belief that Gladstone was prejudiced. The notice given Gladstone fully described the conduct which formed the basis of the contempt charge. There is no indication in the record that Gladstone was confused as to the nature of the contempt proceeding. Certainly it must have been plain to Gladstone and his lawyers that the contempt hearing was not a civil proceeding for the purpose of coercing production of the records. The records had already been destroyed. The only conceivable purpose for the hearing was to determine whether Gladstone should be punished for destroying the documents. At the hearing, Gladstone raised no objection to the notice given him. During the hearing, Gladstone was accorded all the procedural rights due the defendant in a criminal contempt hearing.[2] In light of all these factors, we conclude that no prejudice resulted.

## IV.

On February 26, 1971, shortly after Gladstone's contempt conviction in the court below, he received a notice from the Federal Trade Commission requiring that he once again appear before the Commission to testify. This notice was issued pursuant to an order of the district court dated August 25, 1970. Gladstone appeared before the Federal Trade

---

2. We have considered and rejected Gladstone's contention that the district court improperly placed the burden upon Gladstone to prove his innocence of the charges against him. A reading of the record in its entirety reveals that no such burden was placed upon Gladstone.

Commission on March 16, 1971. When called to testify, he stated, through his counsel, that he was appearing under compulsory process and insisted upon all immunities from prosecution granted to him under Section 9 of the Federal Trade Commission Act.[3] Gladstone was then questioned and testified. A portion of his testimony concerned the transaction from which Gladstone's contempt conviction arose.

Subsequent to this hearing, Gladstone made a motion to this court that his conviction be set aside on the ground that his testimony at the March 16th hearing entitles him to immunity from prosecution under Section 9 of the Federal Trade Commission Act and that this immunity relates back to his earlier conviction. Gladstone relies on the case of Frank v. United States, 120 U.S.App.D. C. 392, 1965, 347 F.2d 486, cert. dis. 382 U.S. 923, 86 S.Ct. 317, 15 L.Ed.2d 338, vacated and remanded on other grounds, 384 U.S. 882, 86 S.Ct. 1912, 16 L.Ed.2d 994 which held that where testimony, concerning a particular transaction is compelled under a grant of immunity, that immunity is retrospective as well as prospective and requires that even convictions obtained prior to the granting of immunity be vacated.

■ Gladstone's motion must be denied for two reasons. First, it is clear that *Frank* is no longer good law. In Katz v. United States, 389 U.S. 348, 349, n. 3, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court considered and rejected the argument that immunity granted under federal immunity statutes similar to Section 9 of the Federal Trade Commission Act relates back to convictions obtained prior to the granting of immunity. Secondly, the statute under which Gladstone claims to have been granted immunity was repealed prior to the March 16, 1971, hearing.[4] That immunity provision was replaced by a new federal immunity statute which authorizes the Government to convey to a prospective witness a grant of immunity only after the witness has first refused to testify and invoked his Fifth Amendment privilege against self-incrimination.[5] Gladstone conceded-

3. 38 Stat. 722 (repealed by P.L. 91–452, 84 Stat. 922).

4. Despite its repeal, Gladstone argues that his testimony is governed by the immunity provision of section 9 of the Federal Trade Commission Act because that provision had not been repealed as of August 25, 1970, the date of the district court's order requiring that Gladstone appear and testify before the FTC at a time and place designated by the Commission. This argument is erroneous. Section 260 of P.L. 91–452 provides:

The provision [repealing various federal immunity statutes including section 9 of the Federal Trade Commission Act] shall take effect on the sixtieth day following the date of enactment of this Act [December 14, 1970]. No amendment to or repeal of any provision of law under title II of this Act shall affect any immunity to which any individual is entitled under such provision *by reason of any testimony or other information given before such day.* (Emphasis added).

Thus, congressional intent is clear. The date of the giving of the testimony, not the date of the issuance of court orders or other compulsory process is determinative. Testimony actually given subsequent to the effective date of the statute is governed by the new immunity provisions regardless of the date of the court's order.

In this case, the court's order was dated August 25, 1970, but Gladstone did not testify until March 16, 1971, long after the February 14, 1971, effective date of the statute.

5. Section 211 of the Organized Crime Control Act of 1970, 84 Stat. 929, 18 U.S.C. §§ 6001 et seq. provides as follows:

§ 6002. *Immunity generally*

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

ly never refused to testify about the events giving rise to his contempt conviction and thus is in no position to assert that he is immune from prosecution with respect to that transaction, much less to assert that the immunity relates back to the prior conviction from which he appeals.

In summary, Gladstone's motion to set aside his conviction is denied and his conviction is in all respects affirmed.

Affirmed.

Jacque Boyle, Los Angeles, Cal., for defendant-appellant.

Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, HUFSTEDLER, and KILKENNY, Circuit Judges.

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.