Kenneth Lee HOPKINS,
Petitioner-Appellant,

v.

Robert Patrick JARVIS, Dekalb County, Georgia, Respondent-Appellee.

No. 80–7268.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 23, 1981.

---

William V. Hall, Jr., Decatur, Ga., for petitioner-appellant.

George P. Dillard, Decatur, Ga., for respondent-appellee.

Before KRAVITCH and THOMAS A. CLARK, Circuit Judges, and LYNNE,* District Judge.

KRAVITCH, Circuit Judge.

Kenneth Lee Hopkins was sentenced for criminal contempt in state court for failure to pay court-ordered alimony and child support. In this 28 U.S.C. § 2254 action, he alleges that his conviction and sentence violated due process because he was not given notice that he was subject to criminal contempt. We conclude that Hopkins received adequate notice and affirm the district court's denial of habeas corpus.

The controversy arose out of a divorce action between appellant and his then wife, Sharon Hopkins, in the Superior Court of Dekalb County, Georgia. On July 21, 1978, that court entered an interlocutory order providing that appellant pay his wife $125 per week for her support and that of their minor child. On August 9, 1978, Mrs. Hopkins filed an application to have appellant cited for willful contempt for failure to pay

* District Judge of the Northern District of Alabama, sitting by designation.

alimony and child support, and on August 29, 1978, the court found appellant in contempt and ordered him to pay all arrearages in full within fifteen days, but imposed no punishment for failure to pay.

Mrs. Hopkins filed a second application to have appellant cited for contempt on September 21, 1978, and on October 25, 1978, the court again found appellant in willful contempt and ordered him to pay all arrearages instanter. The court's written order indicates that no penalty was imposed, but the judge orally in open court warned appellant that any future failure to abide by the court order to make weekly payments "would result in his confinement in the jail of Dekalb County."

On January 3, 1979 Mrs. Hopkins again filed an application to have appellant cited for contempt. Attached thereto was an order to show cause directed to appellant requiring him to appear in Dekalb Superior Court on February 6, 1979 and show cause "why said defendant should not be incarcerated in the common jail of the county until he purges himself of said contempt." When

appellant appeared in court on that date, his payments were current, although they had not been timely made. The trial judge nevertheless cited him for willful contempt and sentenced him to be confined in the county jail for two weekends.

Mrs. Hopkins filed a fourth contempt application on March 12, 1979, and again an order to show cause was served on appellant containing the same language as the previous order. Pursuant to this order, appellant appeared in superior court on March 28, 1979, at which time his payments were current. After a hearing, the court found the payments had not been timely made, held appellant in willful contempt, and sentenced him to an additional twenty days in jail and imposed a $200 fine.

■■ Hopkins appealed both criminal contempt citations to the Georgia Supreme Court, and both were affirmed.[1] He then filed a petition for habeas corpus in federal district court, alleging that the jail sentences he received were in violation of his due process rights under the United States Constitution.[2] Specifically, he contends

1. The primary issue raised by appellant in the Georgia Supreme Court was that he could not be held in contempt because his payments were current at the time of the hearing. Prior to 1977, Georgia did not allow criminal contempt for failure to pay alimony and child support. In *Ensley v. Ensley*, 239 Ga. 860, 238 S.E.2d 920 (1977), however, the Georgia Supreme Court held that criminal contempt was an available sanction for repeated failures to pay court-ordered alimony and child support. Relying upon *Ensley*, the Supreme Court held that Hopkins' sentences for criminal contempt were appropriate and that full payment at the time of the hearing was not a defense.

2. In his answer to appellant's habeas petition, appellee moved to dismiss for failure to exhaust state remedies. The district court, however, found that appellant had exhausted his federal due process claim in state court. The magistrate's report and recommendation found that although the constitutionality of the notice was not directly presented to the Georgia Supreme Court (the published opinion does not mention notice), the motion for rehearing in that court raised the issue, and the Supreme Court's denial of the motion was apparently on the merits.

We have great doubts that this constitutes exhaustion of state remedies as required by 28 U.S.C. § 2254(b); "the state court system must

have been apprised of the facts and the legal theory upon which the petitioner bases his assertion." *Galtieri v. Wainwright*, 582 F.2d 348, 353 (5th Cir. 1978) (en banc). We nevertheless decide this issue on the merits. Exhaustion is not a question of subject matter jurisdiction which this court must raise *sua sponte*; rather, the exhaustion doctrine is a matter of federalism and comity and is intended to give the state the initial opportunity to decide alleged violations of federal constitutional rights. *Bufalino v. Reno*, 613 F.2d 568 (5th Cir. 1980); Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4264 (1978). As such, we have held that failure by the state to raise lack of exhaustion at the district court level ordinarily constitutes a waiver, and the court of appeals may decide the issue on the merits. *Messelt v. Alabama*, 595 F.2d 247 (5th Cir. 1979); *West v. Louisiana*, 478 F.2d 1026 (5th Cir. 1973), *aff'd in pertinent part en banc*, 510 F.2d 363 (5th Cir. 1975). In this case, appellee did raise lack of exhaustion in its answer to the habeas petition; once the magistrate found that appellant had exhausted state remedies, appellee did not raise exhaustion before the district court in its review of the magistrate's report and recommendation. Moreover, appellee has not mentioned exhaustion in his brief or argument before this court. We conclude, therefore, that appellee has waived the defense of lack of exhaustion.

that the notice compelling his attendance in court contemplated only civil contempt, but that when he appeared in court the trial judge cited him for criminal contempt. Finding that appellant received adequate notice that he was subject to criminal contempt, the district court denied the petition.

Although the state court's orders of February 6 and March 28 refer only to "willful" contempt, the parties agree that the sentences imposed were for criminal rather than civil contempt. The most important factor in distinguishing civil and criminal contempt is the purpose of the contempt judgment. *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980); *Smith v. Sullivan*, 611 F.2d 1050, 1053 (5th Cir. 1980). "If its purpose is to coerce the contemnor into compliance with the court's order or to compensate the complainant for losses sustained, then the proceeding is civil. On the other hand, if its purpose is to punish or to vindicate the authority of the court, then the proceeding is criminal." *Dinnan, supra.* Under Georgia law the same distinction applies:

"A major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised. Where the primary purpose is to preserve the court's authority and to punish for disobedience of its orders, the contempt is criminal. Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil." ... The conditional or unconditional imposition of a fine or imprisonment indicates the purpose of an order. If the contemnor is imprisoned for a specified unconditional period (not to exceed 20 days under Code § 24–2615), the purpose is punishment

and thus the contempt is criminal. If the contemnor is imprisoned only until he performs a specified act, the purpose is remedial and hence the contempt is civil. *Ensley v. Ensley*, 239 Ga. 860, 861, 238 S.E.2d 920 (1977).

■ Here, appellant was current in his payments on the dates he was sentenced for contempt in February and March. The sentences were not imposed in order to coerce compliance with the court's orders; rather, they were imposed as punishment for his repeated failures to make timely payments pursuant to the court's orders. Thus, the contempt adjudications were clearly criminal in nature.

■ This civil/criminal distinction is crucial to appellant's argument. Appellant contends that on both occasions the order to show cause requiring his presence in court led him to believe he was only subject to civil contempt. That notice ordered appellant to show cause why he "should not be incarcerated ... until he purges himself of said contempt." The fact that he was current in his payments would be a complete defense to civil contempt but would not, of course, be a defense to criminal contempt. Thus, he argues that because he received a misleading notice, he was not prepared to defend criminal contempt charges and, accordingly, the proceeding violated procedural due process.[3]

As authority appellant relies on cases construing Rule 42(b), Fed.R.Crim.P., concerning criminal contempt. That rule provides that criminal contempt be prosecuted only on notice and that the notice "state the essential facts constituting the criminal contempt and *describe it as such.*" (emphasis supplied). Notice under Rule 42(b) is

---

**3.** One defense to either civil or criminal contempt for failure to pay alimony and child support would be that the payments were in fact timely made. Another defense common to both civil and criminal contempt would be that the alleged contemnor is financially unable to make the payments. *Ensley v. Ensley*, 239 Ga. 860, 238 S.E.2d 920 (1977); *Carlton v. Carlton*, 44 Ga. 216 (1871). An additional defense to civil contempt would be that the payments, although not timely made, are current at the time of the hearing. The purpose of civil contempt is to coerce compliance with the court order; if the payments are current when the alleged contemnor appears in court, a coercive sentence would be inappropriate. Full payment at the time of the hearing is not necessarily a defense to criminal contempt, however, because criminal contempt is imposed as punishment for the past willful failure to obey the court's order (i. e., make *timely* payments). *Hopkins v. Hopkins*, 244 Ga. 66, 257 S.E.2d 902 (1979); *Ensley v. Ensley, supra.*

insufficient unless the defendant is clearly apprised that the proceeding is for criminal, rather than civil, contempt. *United States v. Rizzo*, 539 F.2d 458 (5th Cir. 1976). The notice need not include the words "criminal contempt," however, so long as the notice "insures a realization by contemnors that a prosecution for criminal contempt is contemplated." *United States v. United Mine Workers*, 330 U.S. 258, 298, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947). In *F. T. C. v. Gladstone*, 450 F.2d 913, 916 (5th Cir. 1971), we explicated some of the factors that render Rule 42(b) notice sufficient even when the words "criminal contempt" are absent:

The *Mine Workers* case teaches that reversal is required only where there is a showing that there was prejudice to the contemnor as a result of the failure to clearly designate the nature of the contempt proceeding. In the case at bar, we entertain no serious belief that Gladstone was prejudiced. The notice given Gladstone fully described the conduct which formed the basis of the contempt charge. There is no indication in the record that Gladstone was confused as to the nature of the contempt proceeding. Certainly it must have been plain to Gladstone and his lawyers that the contempt hearing was not a civil proceeding for the purpose of coercing production of the records. The records had already been destroyed. The only conceivable purpose for the hearing was to determine whether Gladstone raised no objection to the notice given him. During the hearing, Gladstone was accorded all the procedural rights due the defendant in a criminal contempt hearing. In light of all these factors, we conclude that no prejudice resulted.

Rule 42(b) is not by its terms applicable to contempt adjudications in state court. Appellant contends, however, by way of analogy to Rule 42(b) that the failure to provide notice that a criminal contempt adjudication is contemplated violates the due process clause of the fourteenth amendment. Although appellant cites no cases directly on point, and we have found none, such an argument merits serious consideration.

Unfortunately for appellant the facts of this case belie his argument. Were we faced only with the written notice provided appellant, we would be constrained to hold the notice insufficient to apprise appellant that he was subject to criminal contempt. Indeed, the language "until he purges himself of said contempt" strongly implies civil, not criminal, contempt.

Appellant, however, overlooks the fact that at his second civil contempt adjudication, on October 25, 1978, the judge admonished him in open court that any future willful failure to abide by the orders of the court would result in his confinement in the county jail. In light of this statement, we find this case very similar to *Gladstone, supra*. Although the written notice alone was inadequate, the surrounding circumstances convince us that appellant was aware that he was subject to an unconditional jail sentence when he appeared in court on February 6. As to the contempt adjudication in March, it is even less plausible that appellant was not aware that criminal contempt was possible. Only one month earlier, he had been adjudicated in criminal contempt for his repeated failures to make timely payments. When he was brought into court in March for again failing to make a timely payment, appellant should have known that he was subject to criminal contempt. We conclude that appellant received adequate notice as to both criminal contempt proceedings.

■ Moreover, assuming arguendo that the notice was insufficient, appellant nevertheless would not be entitled to relief. A habeas petitioner must both allege and demonstrate prejudice. *Lockett v. Blackburn*, 571 F.2d 309 (5th Cir. 1978). Appellant failed to demonstrate in district court wherein he was prejudiced by any lack of notice. Specifically, he has not alleged what defense to the criminal contempt he could have presented (in addition to the defense he did present) had he received adequate notice. Without such a showing, appellant has demonstrated no prejudice. It is true that such a showing is not required of a defendant convicted of criminal contempt in federal court who alleges inad-

equate notice under Rule 42(b). The court of appeals may reverse a federal criminal contempt conviction upon a showing that the defendant was not adequately apprised of the nature of the proceeding; no further showing by the defendant is required. *See, e. g., United States v. Rizzo*, 539 F.2d 458 (5th Cir. 1976). Different policies prevail, however, when a person sentenced for criminal contempt in a state court comes into federal court alleging a violation of the federal Constitution. A habeas petitioner must demonstrate more than a technical violation, *see Lockett, supra*; appellant here has not carried his burden of showing prejudice by proving that the result could have been different had he received adequate notice. *Cf. United States v. Contris*, 592 F.2d 893 (5th Cir. 1979) (convictions will not be reversed because of deficiencies in the indictment that do not prejudice the accused).

For the foregoing reasons, we conclude that appellant has failed to prove a violation of due process, and the judgment of the district court denying the writ is accordingly AFFIRMED.