**Ernest LARSEN, Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents-Appellees.**

No. 82–3535.

United States Court of Appeals,
Fifth Circuit.

July 16, 1984.

Herbert V. Larson, Jr., Asst. Federal Public Defender, New Orleans, La., for petitioner-appellant.

John H. Craft, Susan Scott Hunt, Asst. Dist. Attys., New Orleans, La., for respondents-appellees.

Before GOLDBERG, RUBIN and REAVLEY, Circuit Judges.

GOLDBERG, Circuit Judge.

In this habeas corpus appeal petitioner claims that his trial counsel failed to ade-

quately investigate the facts of his case. This failure, contends the petitioner, led to a denial of his Sixth Amendment right to effective assistance of counsel. Petitioner, however, has failed to demonstrate that the purported lapse caused him any prejudice. We, therefore, affirm the district court's dismissal of his habeas petition.

## FACTS AND PROCEEDINGS BELOW

On September 25, 1975, petitioner and his girlfriend, Lauri Yates, were walking in the French Quarter of New Orleans. They came upon James H. Roberson, who was standing at the intersection of Conti and Burgundy. Mr. Roberson, intoxicated, was conversing with Charles McWilliams, a male transvestite dressed in full drag. As petitioner and his girlfriend approached, Roberson directed an indecent comment to Ms. Yates. Petitioner reacted to this comment by reaching into Ms. Yate's purse and withdrawing a seven and one-half inch long butcher knife. Confronting Roberson with the knife, petitioner then slashed and stabbed the intoxicated man seven times.

The final and fatal blow came when petitioner stabbed Roberson in the right eye. The knife lodged in the back of the victim's skull so that petitioner was unable to retrieve it. Petitioner and Ms. Yates then ran from the scene.

New Orleans police arrested petitioner later that same day. He was subsequently indicted for second degree murder by an Orleans Parish Grand Jury. Clyde Merritt of the Orleans Indigent Defender Program was appointed to represent the petitioner. After Mr. Merritt met with petitioner and interviewed Ms. Yates and petitioners' father, a decision was made to plead innocent to the murder charge. At trial Mr. Merritt presented dual defenses—one seeking acquittal based on self-defense and the other seeking conviction on the lesser crime of manslaughter. Petitioner, nonetheless, was convicted of second degree murder and sentenced to life imprisonment.

The Louisiana Supreme Court affirmed the conviction and sentence;[1] an appeal for state habeas corpus relief was also unsuccessful.[2] Petitioner then filed an application for federal habeas relief, claiming ineffective assistance of counsel at trial, improper jury instructions, and improper cross-examination by the prosecutor. The district court below ordered that an evidentiary hearing be held before a magistrate. In her report the Magistrate found each of petitioner's claims to be without merit.

On this appeal petitioner raises only the issue concerning ineffective assistance of trial counsel. Specifically, he argues that Mr. Merritt's inadequate investigation of the facts of the homicide resulted in a denial of his Sixth Amendment right to effective assistance of counsel.[3] The claim of inadequate investigation centers upon Mr. Merritt's failure to interview two eyewitnesses to the killing, Charles McWilliams and Chris Stover, both of whom ultimately testified for the prosecution at trial. Thus, of the four known eyewitnesses to the homicide Mr. Merritt interviewed only two, petitioner and his girlfriend. Petitioner argues that Mr. Merritt's conduct fell below the standard of "counsel reasonably likely to render and rendering reasonably effective assistance." *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir.1983); *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir.1974).

Conceding that he must show prejudice from the failure in order to obtain relief, *Washington v. Watkins*, 655 F.2d 1346, 1357 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982), petitioner points to Mr. Merritt's presentation of both self defense and manslaughter "defenses" at trial. Because Mr. Merritt did not know how the facts would be relat-

---

1. *State v. Larsen*, 353 So.2d 284 (La.1977).

2. *State ex rel. Larsen v. Blackburn*, 401 So.2d 973 (La.1981).

3. Petitioner does not appeal the district court's ruling with respect to the improper jury instruc-

tions and improper cross-examination issues. Neither does he press the argument taken below that Mr. Merritt's investigation of *petitioner* failed to disclose evidence of mental illness that could have been used to negate intent to kill.

ed by Charles McWilliams and Chris Stover at trial, the petitioner contends that the attorney presented two theories that were wholly incompatible. By arguing justifiable homicide, the defense necessarily had to admit specific intent to kill which is inconsistent with manslaughter. By arguing manslaughter, the defense had to concede "the absence of any reason which would make the homicide justifiable." Appellant's Brief, p. 11.

## DISCUSSION

This Court's duty in deciding claims of actual ineffective assistance of counsel was recently clarified by the Supreme Court in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[4] In *Strickland,* the Court explicitly recognized that the "proper standard for attorney performance is that of reasonably effective assistance." *Id.* at ——, 104 S.Ct. at 2064. The case makes clear that even "professionally unreasonable" errors by counsel do not warrant setting aside a conviction if the error had no effect on the judgment. Moreover, the burden to demonstrate such prejudice rests on the defendant. Justice O'Connor wrote:

> The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
>
> *        *        *        *        *        *
>
> Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. The government is not responsible for, and

hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf. United States v. Valenzuela-Bernal,* 458 U.S. 858, 866–867 [102 S.Ct. 3440, 3446–3447, 73 L.Ed.2d 1193] (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. *Id.* at —— — ——, 104 S.Ct. at 2067–68. *Strickland* also contains a specific test for prejudice.

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at ——. 104 S.Ct. at 2068.

Finally, the Court indicated that where the defendant fails to demonstrate prejudice, the alleged deficiencies in counsel's performance need not even be consid-

---

**4.** Our examination of the record in this case raises some question as to whether petitioner exhausted state remedies concerning the claim of ineffective assistance of counsel raised here. The State, however, has taken the position that petitioner has "satisfi[ed] the requirement of exhaustion." Appellee's Brief, p. 2. This consti-

tutes an "implicit waiver" of the exhaustion issue. *McGee v. Estelle,* 722 F.2d 1206, 1213 (5th Cir.1984). In this case we find no reason to reject the State's concession on exhaustion, *id.* at 1214; accordingly, we consider the merits of petitioner's claim.

ered. According to *Strickland,* "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Id.* at ——, 104 S.Ct. at 2070.

 Taking the path indicated by the Supreme Court, we turn our focus to the prejudice claimed in this case. Petitioner contends that Mr. Merritt's "inadequate investigation" led to the attorney's decision to advance "conflicting" defenses. This contention fails at the most basic level. There is nothing to connect Mr. Merritt's position on the appropriate approach for the defense to his failure to conduct a more extensive investigation. During the evidentiary hearing below, neither Mr. Merritt nor petitioner gave any testimony indicating that interviews of Mr. McWilliams or Mr. Stover would have changed Mr. Merritt's approach to this case. In sum, our review of the record reveals no link between the purported lapse and any prejudice. The petitioner simply has not made the showing of prejudice required for relief.

We note in addition, however, that had the link been established between the failure to interview two witnesses and the choice of defenses, the claimed prejudice still would not meet the overall test set in *Strickland, supra,* —— U.S. at ——, 104 S.Ct. at 2068–2069. On the record before us, the evidence is overwhelming that petitioner was guilty of the crime of which he was convicted. *See id.* (verdict only weakly supported by the record more likely to have been affected than one with overwhelming record support). The hypothetical or theoretical "might have beens" at a trial do not justify the issuance of a Writ. Rather, the petitioner must demonstrate that the "might have beens" *would have been* important enough to affect the proceedings' reliability. Even if the self defense and manslaughter theories seemed inconsistent or confusing to the jury,[5] there

is no "reasonable probability that ... the result of the proceeding would have been different" if the defense trial strategy had been different. See *id.* at ——, 104 S.Ct. at 2068. The judgment of the district court is

AFFIRMED.

---

5. We need not reach the question of whether, under Louisiana law, theories of justifiable homicide and manslaughter are inherently inconsistent—i.e., that interposing both would necessarily create contradictions or confusion. *See* La.Rev.Stat.Ann. §§ 14:19 and 14:31 (West 1974).