**Johnny TRUITT, Petitioner,**

v.

**Thomas JONES, et al., Respondents.**

Civ. A. No. 181–11.

United States District Court,
S.D. Georgia,
Augusta Division.

June 11, 1985.

Martin C. Puetz, Augusta, Ga., for petitioner.

Johnny Truitt, pro se.

Susan V. Boleyn, Atlanta, Ga., for respondents.

## ORDER

BOWEN, District Judge.

Through his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Johnny Truitt seeks to attack the constitutionality of a judgment of conviction by the Superior Court of Richmond County, Georgia.

*Procedural Background*

On August 15, 1977, a jury found petitioner guilty of two counts of armed robbery. The trial judge sentenced petitioner to two concurrent terms of twenty years incarceration.[1] The Georgia Court of Appeals affirmed petitioner's conviction. *Truitt v. State,* 146 Ga.App. 231, 246 S.E.2d 141 (1978). Petitioner then filed in the Superior Court of Walker County,

---

1. Petitioner obtained parole in December, 1983. "While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' ... within the meaning of the habeas corpus statute." *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963). Additionally, petitioner faces other "collateral consequences" flowing from his conviction. *Carafas v. LaVallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968). For these reasons, the petition, filed by petitioner during his imprisonment, is not rendered moot by petitioner's release from incarceration. *Jones, supra; Carafas, supra.*

Georgia, a petition for a writ of habeas corpus. After holding a hearing, the state habeas court considered itself bound by *Truitt v. State, supra,* and thus denied petitioner's application. *Truitt v. Willis,* Civil Action No. 22,589 (Walker Cty.Super.Ct. Nov. 29, 1978). On January 25, 1979, the Supreme Court of Georgia denied petitioner's request for a certificate of probable cause to appeal the dismissal of the state habeas petition. Thereafter, petitioner filed in the state habeas court a motion for reconsideration, which was denied October 22, 1979.

On March 14, 1980, the United States District Court for the Northern District of Georgia filed *in forma pauperis* Truitt's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. After nearly a year of proceedings in the Northern District, the case was transferred to the Augusta Division of the United States District Court for the Southern District of Georgia.[2]

*Grounds For Relief*

In his petition, petitioner Truitt claims that his court-appointed criminal defense attorney, Leonard M. Tuggle,[3] rendered ineffective assistance because Tuggle allegedly: failed to secure the testimony of an adequate number of defense witnesses; failed to object and request a mistrial after the prosecutor had asked a prejudicial question of a defense witness; and refused to appeal petitioner's conviction. Specifically, petitioner asserts in his petition:[4]

A. Ground one: Ineffective assistance of counsel—at trial

Supporting Facts: State appointed counsel failed to object to the question of a defense witness thereby further failing to move the trial court for a mistrial.

The district attorney ask [sic] the key defense witness—quote "isn't it true that you are being held for a crime so vicious that perjury would be pale beside it" unquote—This said question poisoned the minds of the jurors even though the trial judge instructed the jurors to disregard it.

Counsel for the defense should have thereby moved the trial court for a mistrial due to the flamatory [sic] statement question from the district attorney

B. Ground two: (Ineffective assistance of counsel—at appel [sic])

Supporting Facts: The trial court made an order that the defense attorney which was appointed to defend at trial was also attorney for appeal. The attorney Leonard Tuggle refused to appeal for the defendant leaving the defendant on his own to appeal. Defendant appealed prose [sic] and thereby his appeal was improperly taken to the Georgia State Appeals Court—plain error upon the face of the enumeration of errors to the Georgia State Appeals Court as shown attached hereto—underlined error of prose [sic] litigant

C. Ground three: Faiuare [sic] of Appointed Counset [sic] for petitioner's defense to obtain the testimony of his own witnesses

Supporting Facts: petitioner show to the Court that his Appointed Counsel was ineffective in representing his case in that Apoinle [sic] Counsel knew in advance of petitioner's witnesses but fail to have them present at his teital [sic] and the States Attorney asked petitioner about this matter in his trial. [A]nd petitioner advised States Attorney of this before the trial Court.[5]

---

2. This Court on three occasions scheduled an evidentiary hearing. At the insistence of the petitioner, and with the acquiescence of the respondents, the Court continued the first hearing for a lengthy period. The Court postponed the second hearing because of a conflict between the Court calendar and the schedules of counsel. The evidentiary hearing finally was held January 15, 1985.

3. Attorney Tuggle is now deceased.

4. After the Court had allowed the petition filed *pro se* and *in forma pauperis,* the Court appointed counsel to represent petitioner in this habeas action.

5. While the stark words of ground three suggest that petitioner had no witnesses testify on his behalf at trial, the trial transcript reveals that a Larry Evans testified as an eyewitness for the defense. *See* Trial Transcript at 36–47. Addi-

## Exhaustion Of State Remedies

In his state habeas corpus petition, petitioner raised the ineffective assistance claim he asserts in ground one of his federal petition. *See* Respondent's Exhibit No. 1. In addition to presenting the said claim concerning trial counsel's failure to object and request a mistrial, petitioner raised verbally at the state evidentiary hearing his allegation of counsel's failure to file an appeal (ground two of the federal petition).[6] Respondent's Exhibit No. 2 at 5–6, 9–11. On direct appeal of the conviction,[7] moreover, the Georgia Court of Appeals determined that the prosecutor's question to a defense witness did not warrant a mistrial. *Truitt v. State,* 146 Ga.App. at 231, 246 S.E.2d 141.

To exhaust state remedies, as required by 28 U.S.C. § 2254(b), (c), "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Thus, "where the factual bases underlying [a] petitioner's federal claim are significantly different from those underlying his state claim," state remedies are unexhausted. *Burns v. Estelle,* 695 F.2d 847, 850 (5th Cir.1983), *citing Hart v. Estelle,* 634 F.2d 987 (5th Cir.1981). The record indicates that petitioner presented grounds one and two to the state courts. However, with respect to ground three—the claim concerning counsel's failure to obtain trial testimony of certain witnesses—"[t]he 'substance' of [petitioner's] claim is quite different in his federal petition. For the first time, he now sets forth the scenario involving the alibi witness[es]." *Burns,* 695 F.2d

at 849. Petitioner "has not exhausted his state remedies regarding his claim of ineffective assistance of counsel because the factual details forming the basis of his present claim (that is, the alibi witness story) were not presented to the state court when he raised the issue there."[8] *Id.; see also Rodriguez v. McKaskle,* 724 F.2d 463, 466 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 520, 83 L.Ed.2d 408. Indeed, "[t]he present 'claim of ineffective assistance of counsel is materially broader than the one he originally presented' to the state courts." *Stevens v. Zant,* 580 F.Supp. 322, 325 (S.D.Ga.1984), *quoting Domaingue v. Butterworth,* 641 F.2d 8, 12 (1st Cir.1981).

## Waiver Of Exhaustion

Since petitioner failed to present to the Georgia courts his claim concerning counsel's failure to secure testimony of certain witnesses, his federal habeas petition is "mixed," and thus unexhausted. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Nevertheless, the Court has determined that respondents have waived petitioner's failure to exhaust ground three of the federal petition.

Through the orders of March 14, 1980 and May 23, 1980, a Magistrate of the United States District Court for the Northern District of Georgia erroneously indicated that petitioner had exhausted state remedies as to all claims in the federal petition. "[O]nce the magistrate found that [petitioner] had exhausted state remedies, [respondents] did not raise exhaustion before the district court...." *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981)

---

tionally, petitioner testified at the trial. *Id.* at 47–51.

6. As noted above, the Georgia Court of Appeals denied petitioner a certificate of probable cause to appeal the adverse decision of the state habeas court.

7. As discussed *infra,* petitioner's allegation that counsel failed to appeal is without merit.

8. The exhaustion rule requires that the substance of a federal habeas corpus claim first be presented to the state courts, *Picard v.*

*Connor, supra,* 404 U.S., at 278, 92 S.Ct., at 513, and the substance of an ineffective assistance of counsel claim is identified by the list of alleged errors committed by counsel. See *Domaingue v. Butterworth,* 641 F.2d 8, 12–13 (CA1 1981). Unless the state courts have been pointed to a particular error of counsel, a claim based on that error is unexhausted. *McKaskle v. Vela,* —— U.S. ——, 104 S.Ct. 736, 738, 79 L.Ed.2d 195 (1984) (mem.) (O'Connor, J., joined by the Chief Justice and Rehnquist, J., dissenting from denial of certiorari).

(Unit B). While respondents indicated in their answer-response and brief [9] that the claim concerning defense witnesses had not been presented to the state courts, respondents failed to state that petitioner's claim is unexhausted,[10] addressed the merits of the unexhausted claim, and urged the Court to dismiss the petition on the merits. *See* "Brief in Support of Answer-Response" at 6–8. More important, at the evidentiary hearing oral argument, respondents expressly waived exhaustion, believing that resort to the state courts would be futile. *See Lamb v. Jernigan*, 683 F.2d 1332, 1335 n. 1 (11th Cir.1982); *Felder v. Estelle*, 693 F.2d 549 (5th Cir.1982). "When the state fails to assign error to the [Magistrate's] ruling on unexhausted claims, addresses the merits of those claims in its brief, and waives exhaustion at oral argument as done here, it obviously seeks resolution on the merits," *Westbrook v. Zant*, 704 F.2d 1487, 1494 (11th Cir. 1983), and the Court may accept the waiver of exhaustion as to those claims. *Hopkins*, 648 F.2d 983 n. 2; *Westbrook*, 704 F.2d at 1494. Indeed, "[t]he state fully participated in the evidentiary hearing ... [and] never even made the argument which prevails, if at all, only as a matter of comity and has instead acquiescenced in the expenditure of substantial resources in litigating the merits." *Houston v. Estelle*, 569 F.2d 372, 376 (5th Cir.1978). Throughout the proceedings, "[t]he State ... litigated as if there was no question of exhaustion." *Messelt v. Alabama*, 595 F.2d 247, 250 (5th Cir.1979). *See also West v. Louisiana*, 478 F.2d 1026, 1035 (5th Cir.1973), *modified on other grounds*, 510 F.2d 363

(1975) (*en banc*). The Court concludes that the State "has waived the defense of lack of exhaustion." *Hopkins*, 648 F.2d at 983 n. 2. The Court accepts the waiver. *Id.; Thompson v. Wainwright*, 714 F.2d 1495, 1500–03 (11th Cir.1983), *denial of rehearing en banc*, 718 F.2d 1115, *cert. denied*, — U.S. —, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984); *Westbrook*, 704 F.2d at 1494; *Lamb*, 683 F.2d at 1335 n. 1; *Felder*, 693 F.2d at 552.

■ Furthermore, since the exhaustion doctrine is based on notions of comity, a habeas court faced with an unmeritorious, unexhausted claim, as here, "may elect to rule on the claim since denying it would do no violence to principles of comity." *House v. Balkcom*, 562 F.Supp. 1111, 1146 (N.D.Ga.1983) (*citing Johnson v. Balkcom*, 695 F.2d 1320 (11th Cir.1983)), *rev'd on other grounds*, 725 F.2d 608 (11th Cir. 1984). For all the foregoing reasons, the Court shall address the merits of the claims raised in the petition.[11]

*The Merits Of Petitioner's Claims*

(a) The Legal Standard

■ The Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), enunciated the principles for assessing allegations of ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

---

9. The answer-response specifically incorporated by reference respondents' brief. *See* "Answer-Response" at 1.

10. Rule 5 of the Rules Governing 28 U.S.C. Section 2254 Proceedings requires the answer to "state whether the petitioner has exhausted his state remedies." If the respondents do not categorically state in the answer (or in a motion— see Advisory Committee Note to Rule 5) their position regarding exhaustion, the defense of non-exhaustion is waived. *Thompson v. Wainwright*, 714 F.2d 1495, 1502 n. 5 (11th Cir.1983); *McGee v. Estelle*, 722 F.2d 1206, 1215 (5th Cir. 1984).

11. After this case had been pending nearly five years (see footnote 2 and the accompanying text), counsel for petitioner attempted to raise for the first time at the evidentiary hearing oral argument additional, unexhausted claims. Counsel, however, had failed to amend the petition and the respondents neither answered the additional claims, nor indicated any inclination to waive exhaustion as to those claims. With respect to the additional grounds, petitioner has done too little, too late. Petitioner's remedy for the belated claims lies with the courts of the State of Georgia.

*Washington,* 104 S.Ct. at 2064. To prevail on an ineffective assistance claim, therefore, a convicted defendant must demonstrate: (1) that counsel's performance "fell below an objective standard of reasonableness," *id.* at 2065, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[12] *Id.* at 2068. In other words,

> A convicted defendant's claim that counsel's assistance was so defective as tore- quire a reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.[13]

*Id.* at 2064. Thus, even if a petitioner shows that counsel's errors were unreasonable, he cannot prevail unless he also demonstrates "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 2069, 2067. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 2067.

In evaluating whether counsel's performance was deficient, a Court must make every effort "to eliminate the distorting effects of hindsight.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 2065–66, *quoting Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). The Court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim [solely] on the ground of lack of sufficient prejudice, ... that course should be followed."[14] *Id.* at 2069–70.

**(b) Counsel's Failure To Secure Testimony Of Certain Witnesses**

■ A Richmond County Superior Court jury convicted petitioner of committing both the December 23, 1975 armed robbery of the Colonial Bakery Thrift Store, located on Fifteenth Street in Augusta, and the July 1, 1976 armed robbery of the business office of the Underwood Homes apartment complex. Petitioner's claim of counsel's ineffectiveness for failing to secure adequate defense witnesses—ground three— apparently does not concern the bakery store robbery. Indeed, at the evidentiary hearing, petitioner testified that he provided to attorney Tuggle no names of alibi witnesses regarding the armed robbery of the Colonial Bakery. *Cf. Washington,* 104 S.Ct. at 2066 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless, or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."). Petitioner provided to this Court, moreover, no evidence that any defense witness as to the

---

12. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Washington,* 104 S.Ct. at 2068.

13. Only in a narrow class of exceptions, not applicable here, is a petitioner excused from demonstrating both the performance and prejudice prongs of the *Washington* standard. *United States v. Dimatteo,* 759 F.2d 831, 832 (11th Cir. 1985) (*per curiam*), citing *United States v. Cron-*

*ic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and *Chadwick v. Green,* 740 F.2d 897 (11th Cir.1984).

14. When assessing whether counsel's errors prejudiced the outcome of the trial, the Court "must consider the totality of the evidence before the judge or jury." *Washington,* 104 S.Ct. at 2069.

bakery store robbery had been available to counsel. Petitioner thus failed to show that counsel had been deficient with respect to securing witnesses for the bakery store armed robbery charge.

Furthermore, the trial evidence was overwhelming with respect to the bakery store robbery count. The victim identified petitioner as the perpetrator,[15] and on more than one occasion, petitioner confessed to committing the robbery of the bakery.[16] Petitioner even testified at trial that he snatched a money pouch from the hands of the bakery store clerk.[17] Accordingly, even if petitioner had shown that trial counsel failed to interview a witness regarding the bakery store robbery charge, petitioner "would be hard pressed to show prejudice under these facts." *Schwander v. Blackburn,* 750 F.2d 494, 500 (5th Cir. 1985), *accord Raulerson v. Wainwright,* 732 F.2d 803, 810 (11th Cir.1984), *denial of rehearing en banc* 736 F.2d 1528, *cert. denied,* —— U.S. ——, 105 S.Ct. 366, 83 L.Ed.2d 302. *See also Larsen v. Maggio,* 736 F.2d 215, 218 (5th Cir.1984).

At the evidentiary hearing, petitioner testified that some time after the preliminary hearing, he had informed attorney Tuggle of three alibi witnesses as to the Underwood Homes armed robbery charge. Two of the alleged witnesses, the brothers Richard and Thomas Murray, testified at the evidentiary hearing.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir.1978), *accord Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir.1983) (*en banc*). *See also Schwander,* 750 F.2d at 500; *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir.1981). The evidentiary

hearing testimony of the Murray brothers was, at best, speculative. Although the testimony indicated that petitioner had lived with Thomas Murray and that Richard Murray had driven both petitioner and Thomas Murray to and from work prior to July, 1976, neither Murray brother could recall petitioner's whereabouts on July 1, 1976, the day of the Underwood Holmes robbery. *See Thomas v. Estelle,* 588 F.2d 170, 171 (5th Cir.1979). Additionally, the brothers testified that either in late June, 1976 or early July, 1976, petitioner had ceased working with them; they failed to remember the last day petitioner had worked. "Based on the testimony at the evidentiary hearing[,] ... [t]here is no way to determine for certain what [the] testimony [of the Murray brothers] would have been back in [1977] and whether it would have made any difference in the outcome of the trial." *Gomez v. McKaskle,* 734 F.2d 1107, 1109 (5th Cir.1984).

As previously noted, the Court "need not judge the adequacy of counsel's performance if [the Court] find[s] that the alleged errors would nevertheless not amount to sufficient prejudice." *United States v. Dimatteo,* 759 F.2d 831, 832–834 (11th Cir.1985), *citing Washington,* 104 S.Ct. at 2069–70. Thus, even assuming that attorney Tuggle failed to interview the alibi witnesses and that such inaction was deficient—an issue the Court does not decide [18]—the Court concludes that considering the totality of the evidence, petitioner has failed to show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Washington,* 104 S.Ct. at 2069; *Murray v. Maggio,* 736 F.2d 279, (5th Cir.1984). Accordingly, petitioner has failed to meet his burden to show prejudice with respect to the alleged failure of counsel to secure witness testimony. *Id. See*

---

15. Trial Transcript at 6.

16. Trial Transcript at 28–29, 32, 35–36.

17. Trial Transcript at 47–48.

18. The Court notes, however, that throughout his deposition and answers to interrogatories, Tuggle indicated that he had interviewed all

witnesses whom petitioner had identified to him; he declined to subpoena them because they had no relevant knowledge. In contrast, at the evidentiary hearing, petitioner claimed that he had informed Tuggle about the Murray brothers, and the Murrays testified that Tuggle had failed to contact them.

*also Schwander,* 750 F.2d at 500–01; *Gomez,* 734 F.2d at 1109–10; *Thomas,* 588 F.2d at 171.

**(c) Counsel's Failure To Request A Mistrial**

■ At petitioner's trial, the prosecutor cross-examined Larry Evans, an eyewitness for the defense:

> Q. Isn't it true that you are being held on a crime so vicious that perjury would be pale beside it—
>
> THE COURT: That isn't proper.
>
> MR. ALLEN: I apologize.
>
> THE COURT: I instruct the jury to disregard the last question to this witness. Don't let it enter into your consideration of the case.[19]

In his "ground one" for relief, petitioner contends that his attorney's failure to object to, and request a mistrial based upon, the prosecutor's question constitutes a defect of constitutional proportions. Petitioner is misguided, however. Review of attorney Tuggle's deposition and the relevant case authority indicates that Tuggle's failure to object and request a mistrial was "sound trial strategy." *Washington,* 104 S.Ct. at 2066. Indeed, "[a] conscious and informed decision on trial tactics cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir.1983).

■ In his deposition, Tuggle indicated that his reasons for not requesting a mistrial were tactical:

> [t]he Court chastised the District Attorney to such an extent and told him not to do that anymore, and he told the jury to disregard that ... question, to wipe it from their minds. He instructed them thoroughly on that point, and at that time I thought of raising a motion for mistrial, but did not do so.... And because of those cases that I had recently read on that point, I did not ask for a motion for mistrial because I felt at the

time, and I still know, that the Court thoroughly and very explicitly explained to the jury and cured the error that had been made by the District Attorney in tainting the minds of the jury.[20]

Counsel's assessment of the law is correct, because when a prosecutor has asked an isolated, prejudicial question expressing an opinion as to witness credibility, a prompt and properly worded instruction by the judge to the jury may cure and render harmless any prejudice arising from the question. *United States v. Nickerson,* 669 F.2d 1016, 1020 (5th Cir.1982) (Unit B, Former Fifth Circuit case); *United States v. Bernes,* 602 F.2d 716, 721 (5th Cir.1979); *United States v. Glover,* 677 F.2d 57, 58 (10th Cir.1982); *United States v. Leaman,* 546 F.2d 148 (5th Cir.1977). Therefore, counsel's informed decision to forego requesting a mistrial "falls within the wide range of reasonable professional assistance" defense attorneys are presumed to provide. *Washington,* 104 S.Ct. at 2066. *See also Garland,* 717 F.2d at 206.

With respect to the prejudice prong of the *Washington* standard, "[l]ittle, if any, prejudice resulted from the unanswered question" to Larry Evans because his testimony was thoroughly impeached during the remainder of cross-examination.[21] *United States v. Esle,* 743 F.2d 1465, 1477 (11th Cir.1984). Furthermore, "whatever lingering prejudice may have existed was cured by the instruction." *Id. See also Nickerson, supra; Bernes, supra; Glover, supra; Leaman, supra.* Accordingly, with respect to his first ground for relief, petitioner not only has failed to demonstrate that counsel was deficient, he has failed to show that such alleged deficiency prejudiced the outcome of his trial. *Washington,* 104 S.Ct. at 2064–69.

**(d) Counsel's Alleged Failure To Appeal**

■ In his petition, petitioner claims within ground two that attorney Tuggle refused to prosecute an appeal and thus forced petitioner to appeal *pro se.* This contention, like petitioner's other claims, is

---

**19.** Trial Transcript at 44.

**20.** Deposition of Leonard Tuggle at 10–11.

**21.** Indeed, the transcript overflows with Evans' incredible testimony. *See* Trial Transcript at 39–45.

unmeritorious. Tuggle's representation of petitioner on appeal was recognized by the Georgia Court of Appeals. *See Truitt v. State*, 146 Ga.App. at 232, 246 S.E.2d 141. Tuggle filed an appellate brief on behalf of petitioner, *see* Respondent's Exhibit No. 6, and worked approximately thirty-six hours researching and writing the brief. Answers to Interrogatories at 4. Accordingly, petitioner has failed to demonstrate a reasonable probability that counsel committed the errors enumerated in ground two or that petitioner suffered any prejudice from the alleged errors. *See Washington*, 104 S.Ct. at 2064–69.

*Conclusion*

For all the aforementioned reasons, petitioner has not shown that he received ineffective assistance of counsel within the meaning of the Sixth Amendment to the United States Constitution. Accordingly, the Court DENIES petitioner a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and orders the petition DISMISSED.